THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN NEWELL, Defendant-Appellant.

First District (3rd Division)   No. 1—91—4004

Opinion filed March 30, 1994.

Michael J. Pelletier, of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, William D. Carroll, and Kevin J. Golden, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CERDA delivered the opinion of the court.

Following a jury trial, defendant, John Newell, was convicted of possession of a stolen motor vehicle (Ill. Rev. Stat. 1991, ch. 95$^{1}$/$_{2}$, par. 4—103(a)(1) (now 625 ILCS 5/4—103(a)(1) (West 1992)) and sentenced as a Class X offender to 15 years' imprisonment. On appeal, defendant asserts that the State failed (1) to prove him guilty beyond a reasonable doubt because the evidence failed to prove that he knew the car he was driving was stolen; (2) to meet its burden under *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, since it did not give a racially neutral explanation for its use of a peremptory challenge on a potential African-American juror; and (3) to allege in the indictment its intention to seek a Class X sentence. For the following reasons, we affirm.

Joseph Davis testified that he owned the 1985 Chevrolet Monte Carlo that defendant was driving on January 15, 1991. After work on

January 14, 1991, between 5 and 5:30 p.m., Davis parked the automobile in front of his house. He locked the car and took the keys into his house. At 6 a.m. the next morning, he noticed that his car was missing.

Later that day, Davis went to the police station where he identified his auto. There was no damage to the automobile, its windows, or its locks. Davis stated that he never saw the keys that the police officer showed him. He had the only set of keys to his automobile in his pocket.

Chicago police officer Thomas Sailer testified that he stopped defendant for speeding at 1 p.m. on January 15, 1991. Defendant was driving a 1985 Chevrolet Monte Carlo. Officer Sailer did not observe any punched door or trunk locks, broken windows, or a peeled steering column on the vehicle, but did see a set of keys in the ignition. When defendant could not produce a driver's license, Officer Sailer checked the automobile's license plate number. After he learned that the automobile had been reported stolen, he called for backup and placed defendant under arrest for possession of a stolen vehicle.

Chicago police officer Rayfield Frias testified that he drove the automobile to the police station. When the owner identified the automobile as his and said that the keys recovered from the automobile were not his, Officer Frias took the ignition key and tried it in the door of a randomly selected older Chevrolet model vehicle parked in the police station parking lot. He opened the car's door and turned on the ignition with the key. Officer Frias then asked defendant where he got the car. According to Frias, defendant said that he had stolen it from his brother because his brother had previously stolen a car from him. Officer Frias admitted, however, that he did not remember defendant's exact words and his case report indicated that defendant used the word "took." Earlier, Officer Frias testified at the preliminary hearing that defendant said "he took the car [from his brother] because his brother had stolen his car. So he was going to steal his brother's car to pay him back."

Defendant testified that he believed that his brother, Larry Newell, owned the automobile because he saw Larry driving it at 9 p.m. on January 14, 1991. The next morning, while Larry was still asleep, defendant took the car keys from where Larry had left them the night before. Defendant got into the car between 5 and 5:30 a.m. and started it with the ignition key. He planned to drive to his girl friend's house on Chicago's north side and then take her shopping, but since it was so early, he went to his cousin's house until 1 p.m.

According to defendant, when Officer Sailer told him the

automobile was stolen, he replied that the officer was mistaken. At the police station, defendant told the police officers that he did not know why his brother would report the car stolen; his brother had taken his car a number of times; and it did not make sense that the one time he took his brother's car he would report it stolen. Defendant testified that he and his brother always borrowed each other's cars. Finally, defendant stated that he did not know the automobile was stolen.

After deliberations, the jury returned a verdict finding defendant guilty of possession of a stolen motor vehicle. At the sentencing hearing, the State requested that defendant be sentenced as a Class X offender under section 5—5—3(c)(8) of the Unified Code of Corrections (Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—3(c)(8) (now 730 ILCS 5/5—5—3(c)(8) (West 1992))). After evidence of defendant's prior convictions was presented, he was sentenced to 15 years' imprisonment.

On appeal, defendant asserts that he was not proven guilty beyond a reasonable doubt because the State failed to establish knowledge, which is an element of the crime. Defendant argues that the statute's permissive inference should not be applied because he gave a reasonable explanation for his possession of the automobile.

■ We disagree. Defendant was in exclusive possession of the automobile and did not give a reasonable explanation for his possession. For a person to be convicted of possession of a stolen motor vehicle, the State must prove beyond a reasonable doubt that the defendant was in possession of the vehicle, that the vehicle was stolen, and that the defendant knew that it was stolen. (*People v. Tucker* (1989), 186 Ill. App. 3d 683, 693-94, 542 N.E.2d 804; Ill. Rev. Stat. 1991, ch. 95$^1$/$_2$, par. 4—103(a)(1) (now 625 ILCS 5/4—103(a)(1) (West 1992)).) Where exclusive possession has been shown and there is no reasonable explanation given for that possession, an inference of defendant's knowledge can be drawn from the surrounding facts and circumstances. *People v. Abdullah* (1991), 220 Ill. App. 3d 687, 691, 581 N.E.2d 67; *People v. Mijoskov* (1986), 140 Ill. App. 3d 473, 477, 488 N.E.2d 1374.

■ Section 4—103(a)(1) of the Illinois Vehicle Code (Ill. Rev. Stat. 1991, ch. 95$^1$/$_2$, par. 4—103(a)(1) (now 625 ILCS 5/4—103 (a)(1) (West 1992))) states in pertinent part:

"It may be inferred, therefore that a person exercising exclusive unexplained possession over a stolen or converted vehicle *** has knowledge that such vehicle *** is stolen *** regardless of whether the date on which such vehicle *** was stolen is recent or remote."

To rebut the inference of guilty knowledge, the defendant must offer

a reasonable story or be judged by its improbabilities. *Abdullah*, 220 Ill. App. 3d at 691; *Mijoskov*, 140 Ill. App. 3d at 477.

Even though there were no visible signs of theft to the car, the trial court determined that defendant's explanation was not reasonable. Instead, it was found to be improbable. We agree. Thus, we conclude that defendant was proven guilty beyond a reasonable doubt.

■ Defendant next asserts that the State failed to meet its burden under *Batson* because it did not give a racially neutral explanation for its use of a peremptory challenge on Kevin Danzy, an African-American man who was a potential juror. We disagree. Initially, we find that the issue of whether defendant made a *prima facie* showing is moot because the trial court ruled that defendant had established a *prima facie* showing of racial discrimination and the State gave race-neutral explanations for its use of peremptory challenges on three potential African-American jurors. Once a prosecutor has offered a race-neutral explanation for each peremptory challenge and the trial court has ruled on the issue of alleged intentional discrimination, the preliminary issue of whether the defendant had made a *prima facie* showing becomes moot. *Hernandez v. New York* (1991), 500 U.S. 352, 359, 114 L. Ed. 2d 395, 405, 111 S. Ct. 1859, 1866; *People v. Mitchell* (1992), 152 Ill. 2d 274, 604 N.E.2d 877.

■ We reject defendant's contention that the State did not meet its burden of giving a racially neutral explanation for its use of its peremptory challenge against Kevin Danzy. Even though Danzy was 23 years old and defendant was 41 years old, defendant appeared to be in his twenties. The State did not use its peremptory challenge against Danzy because he was 23 years old, but because he appeared to be the same age as defendant.

The fact that a prospective juror is similar in age to a defendant is an appropriate race-neutral explanation. (*People v. Andrews* (1993), 155 Ill. 2d 286, 299-301, 614 N.E.2d 1184.) In this case, the perception was that the potential juror was similar in age to defendant.

When defense counsel challenged the State's use of its peremptory challenge against Danzy, she did not raise the issue of the age difference between Danzy and defendant or indicate defendant's actual age. After the jury was sworn, defense counsel renewed her *Batson* claim, indicating that defendant was 41 years old. The trial court stated that defendant looked considerably younger than 41 years old. Although defense counsel disagreed, the trial court ruled that the State's explanation was satisfactory.

The State's perception that defendant was Danzy's age is a legitimate reason even though defendant was, in fact, much older. The trial

court's determination, which is a matter of fact involving an evaluation of credibility, is not against the manifest weight of the evidence. (*Mitchell*, 152 Ill. 2d at 288-89.) Thus, we conclude that the State's explanation was adequate.

■ Finally, defendant asserts that he was improperly sentenced as a Class X offender because the State failed to allege in the indictment its intention to seek a Class X sentence. Section 111—3(c) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1991, ch. 38, par. 111—3(c) (now 725 ILCS 5/111—3(c) (West 1992))) states in part as follows:

"When the State seeks an enhanced sentence because of a prior conviction, the charge shall also state the intention to seek an enhanced sentence and shall state such prior conviction so as to give notice to the defendant. *** For the purposes of this Section, 'enhanced sentence' means a sentence which is increased by a prior conviction from one classification of offense to another higher level classification of offense set forth in Section 5—5—1 of the 'Unified Code of Corrections' ***; it does not include an increase in the sentence applied within the same level of classification of offense."

On the other hand, section 5—3—3(c)(8) (Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—3(c)(8) (now 730 ILCS 5/5—5—3(c)(8) (West 1992))) states in part as follows:

"When a defendant, over the age of 21 years, is convicted of a Class 1 or Class 2 felony, after having twice been convicted of any Class 2 or greater Class felonies in Illinois *** such defendant shall be sentenced as a Class X offender."

We agree with the decisions in *People v. Contreras* (1993), 241 Ill. App. 3d 1023, 609 N.E.2d 949, *People v. Jameson* (1993), 252 Ill. App. 3d 604, 626 N.E.2d 230, and *People v. Cole* (1993), 256 Ill. App. 3d 1, which held that the language of section 111—3(c) (Ill. Rev. Stat. 1989, ch. 38, par. 111—3(c) (now 725 ILCS 5/111—3(c) (West 1992))) clearly applies only to those situations where the State intends to enhance the penalty by raising the classification of the offense due to a prior conviction. The language explicitly excludes situations where the sentence is increased because of a prior conviction but the classification of the offense remains the same. *Contreras*, 241 Ill. App. 3d at 1026; *Jameson*, 252 Ill. App. 3d at 606; *Cole*, 256 Ill. App. 3d at 5-6.

After applying the rules of statutory construction to section 111—3(c), the court in *Contreras* stated:

"[W]e find that its provisions apply only to those situations where the State intends to enhance the penalty by raising the classification of the offense due to a prior conviction. (See, *e.g.*, retail theft (Ill. Rev. Stat. 1989, ch. 38, par. 16A—10(2)) and crimi-

nal sexual assault (Ill. Rev. Stat. 1989, ch. 38, par. 12—13(b)).) The language explicitly excludes those situations *** where the sentence is increased because of a prior conviction, but the classification of the offense remains the same." *Contreras*, 241 Ill. App. 3d at 1025-26.

Thus, we conclude that defendant was properly sentenced under section 5—5—3(c)(8) (Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—3(c)(8) (now 730 ILCS 5/5—5—3(c)(8) (West 1992))). Where the sentence, but not the classification of offense, was enhanced by defendant's prior convictions, there is no statutory violation in the sentencing procedure employed in this case. *Contreras*, 241 Ill. App. 3d at 1025-26; *Jameson*, 252 Ill. App. 3d at 606; *Cole*, 256 Ill. App. 3d at 6.

Based on the foregoing, we affirm the circuit court judgment.

Affirmed.

RIZZI and GREIMAN, JJ., concur.