THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KERWIN SMITH, Defendant-Appellant.

Third District    No. 3—92—0752

Opinion filed June 29, 1994.—Rehearing denied August 9, 1994.

McCUSKEY, J., concurring in part and dissenting in part.

Joseph N. Ehmann, of State Appellate Defender's Office, of Ottawa, for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STOUDER delivered the opinion of the court:

The defendant, Kerwin Smith, was charged by indictment with burglary (720 ILCS 5/19—1 (West 1992)) and retail theft (720 ILCS 5/16A—3(a) (West 1992)). Following a jury trial, the jury found the defendant guilty on both counts. The trial court sentenced the defendant to 10 years in prison on the burglary offense and to a six-year extended-term sentence for the retail theft offense. We affirm as modified.

At defendant's trial, Jodi Babcock testified that on February 5, 1992, she was working as a manager at a Fashion Bug clothing store in Peoria. She testified that during business hours the store is open to the general public.

Sometime after 2 p.m. that day, Babcock was near the back of the store assisting a customer. At that time, another employee, Jennifer Adams was near the front of the store. Babcock noticed the defendant and a woman (later identified as Connie Doolittle) near the front of the store. The defendant and Doolittle were standing near a rack of leather coats, with the defendant standing behind Doolittle. The record shows the coats were individually chained to the rack.

Babcock testified she saw the defendant carry a plastic bag into the store. Babcock saw Adams approach the defendant and Doolittle, speak with them, and then walk away. Babcock walked toward the

front of the store, then returned to the back of the store. Shortly thereafter she walked toward the front of the store again, noting that Doolittle and the defendant were leaving the store. She testified she saw the defendant carrying the plastic bag when he left the store.

Immediately thereafter, two women entered the store and spoke with Babcock. Babcock testified she then "hollered" toward the back of the store for someone to call the police. Babcock ran outside in time to see the defendant drive by in a car. Babcock noted the type of car and the license plate number. She recognized the license plate was an out-of-State plate; however, she could not determine which State. Babcock later gave the police this information, along with a description of the defendant and Doolittle.

Babcock testified that after the defendant left the store, a chain which was holding one of leather coats was found to have been cut. At trial, Babcock identified a leather coat which was found in the defendant's car trunk as coming from her store. She further testified the coat was on sale on February 5, 1992, for $229.

On cross-examination, Babcock testified she did not see anyone in possession of wire cutters or bolt cutters. Nor did she see anyone cut the chain.

Jennifer Adams testified she was working as a salesperson at the Fashion Bug on February 5, 1992. Noticing the defendant and Doolittle near a rack of leather coats, and that Doolittle was looking at her, she approached the couple and asked them if she could be of any help. The defendant turned his head quickly toward her, while Doolittle responded that they were just looking. Adams testified she then walked away from the couple and that she saw them leave the store about three minutes later. As they left, she noticed the plastic bag "they" were carrying appeared fuller then when "they" entered the store and contained some type of dark clothing. (Neither the prosecutor nor defense counsel asked Adams whether the defendant or Doolittle was carrying the plastic bag.)

Immediately after the defendant and Doolittle left the store, Adams went over to the rack of leather coats to look for empty hangers—generally an indication that something had been taken. She found no empty hangers. At about the same time two women entered the store and spoke with Babcock. After overhearing what the women said to Babcock, Adams returned to the rack of leather coats to double check. She found that one of the chains appeared to have been cut. She told Babcock about the chain. Babcock "hollered back to the desk" for someone to call the police and ran out of the store. An inventory of the coat rack revealed that one of the leather coats was missing.

Thereafter, the police came to the store and spoke with her and Babcock. Adams testified the police called back about a half hour later requesting that someone from the store come to a local McDonald's. Adams went to the McDonald's and identified the defendant, Doolittle and the leather coat.

Over defense counsel's objection, Adams was allowed to testify that although the Fashion Bug was open to the general public, if she knew someone was entering the store with an intent to steal merchandise, she would not allow him or her in the store. On cross-examination, Adams admitted it was possible that the defendant and Doolittle entered the store with the intent to look at merchandise and perhaps purchase something. She also testified it was possible they formed the intent to steal the coat while they were in the store. She further testified on cross-examination that she did not see anyone take the coat, nor did she see anyone in possession of chain or wire cutters.

Peoria police officer William Koenig testified he was dispatched to the Fashion Bug on February 5, 1992, after a shoplifting report. Koenig spoke with Babcock and Adams and then left the store to look for the vehicle described by Babcock. Subsequently he saw the car and followed it into the parking lot of a McDonald's. The car had Ohio license plates and the defendant was driving. He approached and asked the occupants for identification and ordered them out of the car. Koenig observed a small pair of wire cutters and a screwdriver on the front passenger seat. Admittedly without asking permission of the defendant, Koenig used the screwdriver to open the trunk. (The lock mechanism was broken.) In the trunk he found a bag and a leather coat. Subsequently, someone from the Fashion Bug came to the McDonald's parking lot and identified the leather coat as coming from the store.

The defendant testified he went to the Fashion Bug to buy a sweater for his mother. He testified he met Doolittle coming out of the store and that she followed him back into the Fashion Bug. He was in the store about five or six minutes. The defendant denied having wire cutters on his person while in the store. He also denied carrying the plastic bag. The defendant denied any intent or plan to steal merchandise while in the Fashion Bug. The defendant testified he did not see Doolittle put anything in the bag. They left the store together and drove to a mall. Doolittle asked the defendant if she could put the bag she was carrying into his trunk. Subsequently, he and Doolittle were stopped by Officer Koenig.

In rebuttal, Jodi Babcock testified she did not see Doolittle in the store prior to her coming in with the defendant.

The jury returned verdicts finding the defendant guilty of burglary and retail theft. The trial court sentenced the defendant to concurrent terms of 10 and 6 years in prison, respectively, on the offenses.

On appeal, the defendant contends shoplifting (retail theft) cannot be prosecuted as burglary because to commit the offense of burglary, there must be an unauthorized entry, and the entry onto the sales floor of a retail establishment which is open to the general public, during business hours, cannot be considered unauthorized. In addition, the defendant argues the evidence is insufficient to show his entry into the Fashion Bug was unauthorized.

A person commits burglary when without authority he knowingly enters (or remains within) a building, with the intent to commit a felony or theft. See 720 ILCS 5/19—1 (West 1992).

In *People v. Weaver* (1968), 41 Ill. 2d 434, 243 N.E.2d 245, the defendant was found guilty, *inter alia*, of the burglary of a self-service laundromat. In *Weaver*, police officers on patrol noticed the defendant and another man standing in a laundromat. The defendant was standing near a vending machine which was open. The officers subsequently entered the laundromat, questioned the defendant and searched him. The search reveal $50 in change in the defendant's pockets. Later, the defendant tried to get rid of a key while in the police car. The key opened the door to the vending machine. At his trial, the defendant testified he and the other man entered the laundromat to make a phone call.

On appeal, the defendant argued the evidence failed to establish the crime of burglary beyond a reasonable doubt, because the laundromat was open to the public at the time. In rejecting the defendant's contention, the Illinois Supreme Court stated:

"While a common-law breaking is no longer an essential element of the crime of burglary [citations], the statute requires an entry which is both without authority and with intent to commit a felony or theft. [Citation.] A criminal intent formulated after a lawful entry will not satisfy the statute. But authority to enter a business building, or other building open to the public, extends only to those who enter with a purpose consistent with the reason the building is open. [Citation.] An entry with the intent to commit a theft cannot be said to be within the authority granted patrons of a laundromat." *People v. Weaver* (1968), 41 Ill. 2d 434, 438-39, 243 N.E.2d 245, 248.

Citing the fact there was a telephone outside the laundromat the men could have used and that neither man had any laundry, the court found the jury could have concluded that the evidence

established that the defendant entered the laundromat with the intent to commit a theft using the key to open the vending machine.

Subsequent cases have relied on *Weaver* to uphold convictions for burglaries occurring in businesses open to the public during business hours. (See *People v. Blair* (1972), 52 Ill. 2d 371, 288 N.E.2d 443 (coins taken from coin box of self-service car wash); *People v. Stager* (1988), 168 Ill. App. 3d 457, 522 N.E.2d 812 (shoplifting of food from a grocery store); *People v. Drake* (1988), 172 Ill. App. 3d 1026, 527 N.E.2d 519 (forging a check in a grocery store); *People v. Hopkins* (1992), 229 Ill. App. 3d 665, 593 N.E.2d 1028 (taking money from cash register during business hours).) Thus, despite the analytical and conceptional difficulties readily apparent, the case law is rather consistent in holding that under Illinois law a burglary can occur during business hours in a building open to the public.

A review of the cases, however, also reveals that the affirmance of such a conviction rests upon whether the evidence is sufficient to show an intent to commit a felony or theft at the time of entry onto the premises of the business establishment. Recently, this court has found that under some circumstances the evidence was not sufficient to support a burglary conviction in the open-business context. (See *People v. Durham* (1993), 252 Ill. App. 3d 88, 623 N.E.2d 1010; *People v. O'Banion* (1993), 253 Ill. App. 3d 427, 625 N.E.2d 451.) In those cases there was no independent evidence supporting a finding that the defendant entered the premises with the requisite intent. In *O'Banion*, for example, the defendant brought nothing into the store evidencing an intent to steal at the time of entry. In fact, it was not shown when the defendant entered the store, nor how long he had been there before he was noticed and placed under surveillance by the store's loss control manager.

On the other hand, in *People v. Stager* (1988), 168 Ill. App. 3d 457, 522 N.E.2d 812, three women entered an Eagle grocery store each carrying a nylon "jet bag" or duffle bag. As the women placed items in their common shopping cart, they also placed items in the bags. They paid for the items in the cart and attempted to leave the store without paying for the items in their bags. In addition, there was evidence that one of the women later told the police the three went to the grocery store that evening with the intent to steal merchandise and that she left her regular purse in her vehicle before entering the store.

Thus, in *Stager*, there was evidence of an intent to commit a theft at the time of entry. Such is the case here. Jodi Babcock testified she saw the defendant carry the bag into the store in which the leather coat was later hidden as it was taken from the Fashion Bug.

Jennifer Adams testified that after the defendant and Doolittle left the store she discovered a chain, which appeared to have been cut, hanging from the leather coat rank. An inventory revealed one coat was missing. Within a short time, the defendant was stopped and a pair of wire cutters was found on the front seat of his car. We find the fact that there was evidence that the defendant carried the bag in and out of the store, and that a pair of wire cutters was found on the front seat of his car, sufficient evidence to allow the jury to find the defendant possessed the requisite intent to steal at the time he entered the Fashion Bug.

The defendant also contends the burglary charge was void because the indictment alleged separate and disparate acts of both unlawful entry and unlawfully remaining within the building with an intent to commit a theft. The defendant raises this issue for the first time on appeal.

In pertinent part the indictment alleged that the defendant and Connie Doolittle "committed the offense of BURGLARY in that they, did without authority knowingly enter or remain within a building known as the Fashion Bug, *** with the intent to commit therein a theft."

When the sufficiency of a charging instrument is challenged for the first time on appeal, the instrument will be upheld if it apprises the accused of the precise offense charged with sufficient specificity to prepare his defense and allows pleading a resulting conviction as a bar to future prosecution arising out of the same conduct. (*People v. Pujoue* (1975), 61 Ill. 2d 335, 335 N.E.2d 437.) It has been held that a variance, to require reversal, must be material and of such character as to mislead the accused in making his defense or expose him to double jeopardy. *People v. Maxwell* (1992), 148 Ill. 2d 116, 592 N.E.2d 960.

Recently this court upheld the burglary conviction of a defendant in which the indictment alleged the defendant both entered and remained within a motor vehicle with the intent to commit a theft therein. (See *People v. King* (1993), 253 Ill. App. 3d 705, 625 N.E.2d 453, *appeal denied* (1994), 155 Ill. 2d 570.) Applying the test announced in *Pujoue*, we found the defendant did not contend the defect in the indictment prejudiced him in preparing his defense. Nor did we find the charging of the defendant in the disjunctive had any effect on the outcome of the trial.

■ In the instant case, the defendant does not argue in his brief that he was prejudiced by the defect in the indictment, nor that he cannot plead his burglary conviction as a bar to a future prosecution arising out of his conduct at the Fashion Bug on February 5, 1992.

He simply contends the indictment is void. Applying the test announced in *Pujoue,* and followed by this court in *King,* we find under the circumstances of this case that there was no reversible error *vis-a-vis* the indictment. See also *People v. Brown* (1994), 259 Ill. App. 3d 579.

The defendant asserts the trial court committed reversible error when it gave a non-Illinois Pattern Jury Instruction (IPI) defining the limited authority to enter a building open to the public. The defendant contends the instruction was misleading, confusing and did not accurately state the law. The defendant concedes this issue is forfeited by his failure to object at trial or in a post-trial motion. However, he argues the giving of the instruction was plain error which denied him a fair trial. The defendant also contends that defense counsel's failure to object to the giving of the instruction constituted ineffective assistance of counsel.

The IPI burglary instruction given to the jury read: "A person commits the offense of burglary when he, without authority, knowingly enters a building with intent to commit therein the offense of theft." (See Illinois Pattern Jury Instructions, Criminal, No. 14.07 (3d ed. 1992).) The jury was also given the IPI issues instruction defining the elements of burglary that the State had to prove. (See Illinois Pattern Jury Instructions, Criminal, No. 14.08 (3d ed. 1992).) Additionally, the State offered, and the trial court allowed, the following non-IPI instruction to be given: "Authority to enter a business, or other building open to the public, extends only to those who enter with a purpose consistent with the reason the business is open. An entry with the intent to commit a theft cannot be said to be within the authority granted the public."

Supreme Court Rule 451(a) requires that non-IPI instructions shall be used only if no IPI instruction on a specific subject exists, or if the existing IPI instruction does not contain an accurate statement of the law. 134 Ill. 2d R. 451(a); *People v. Haywood* (1980), 82 Ill. 2d 540, 413 N.E.2d 410.

Recently, the Illinois Supreme Court addressed the use of a supplemental "limited authority" non-IPI instruction in the context of home invasion. (See *People v. Bush* (1993), 157 Ill. 2d 248, 623 N.E.2d 1361.) In *Bush,* the defendant's convictions were reversed on the grounds that the trial court erred in giving a non-IPI instruction concerning the "limited authority doctrine" which misstated the law. In *Bush,* the defendant and a group of men entered a home in the early morning hours to retrieve money owed to them by a man who was sleeping in the home. A fight occurred between the men and some of the residents of the home. At his trial, there was conflicting

testimony as to whether the defendant had been initially invited into the home.

After being given the IPI instructions concerning home invasion (see Illinois Jury Instructions, Criminal, Nos. 11.21, 11.22 (2d ed. 1981)), the court supplemented these instructions (over defense counsel's objection) with the following instruction: "For purposes of the offense of home invasion, an entry into the dwelling in question is unauthorized even when initially invited when the defendant or one for whose conduct he is legally responsible commits illegal acts within the dwelling." *People v. Bush* (1993), 157 Ill. 2d 248, 253, 623 N.E.2d 1361, 1363.

The supreme court agreed with the appellate court's finding that the giving of this instruction was reversible error because it had the potential to confuse the jury regarding the elements of the offense of home invasion.

In *Bush*, the supreme court discussed its recent holding in *People v. Peeples* (1993), 155 Ill. 2d 422, 616 N.E.2d 294, in which it found that when a person comes to a private residence and is invited in by the occupant, the authorization to enter is limited, and any criminal acts committed therein exceed this limited authority. In logic similar to that used in the context of businesses open to the public, the supreme court held in *Peeples* that no individual who is granted access to a dwelling can be said to be an authorized entrant if he intends to commit criminal acts therein, because, if such intentions had been communicated to the owner at the time of entry, it would have resulted in the individual's being barred from the premises *ab initio*. (As in the instant case, the issue is whether the person possessed the intent to commit a criminal act at the time entry was granted.) However, if a person enters with an innocent intent, his entry is authorized, and his subsequent actions therein, even if criminal, do not affect the initial authorization.

The *Bush* court held that the instruction given in that case failed to make the above distinction and thus failed to accurately state the law. The court noted there was evidence whereby the jury could have concluded that the defendant did not have a culpable mental state at the time he entered the home. However, the non-IPI instruction given, if followed by the jury, would have prevented the jury from reaching this conclusion.

The *Bush* court offered a suggested instruction: "[A]n entry into a dwelling [is] defined as unauthorized, even when initially invited, when the defendant or one for whose conduct he is legally responsible has, at the time of entry, an intent to commit criminal acts within the dwelling." *People v. Bush* (1993), 157 Ill. 2d 248, 257, 623 N.E.2d 1361, 1365.

■ In light of the *Bush* case, we have reviewed the non-IPI instruction given in the instant case and find that it sufficiently focuses on the intent of the defendant at the time of entry and thus accurately states the law as it has developed in this area. In sum, we find the trial court did not commit reversible error in allowing the non-IPI instruction to be given to the jury. In addition, as we find the instruction was proper, there is no basis for finding defense counsel to be ineffective in this regard.

■ The defendant also argues the prosecutor made improper statements of law and fact during closing argument, which denied him a fair trial. We find, as the defendant concedes, that he has not properly preserved these alleged errors for review, in that he failed to object at trial or to raise the alleged errors in a post-trial motion. (See *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) We also find no merit to defendant's contentions that the errors constituted plain error. See 134 Ill. 2d R. 615(a).

The defendant also challenges the sentences imposed in this case. As mentioned above, the defendant was sentenced to 10 years in prison on the burglary conviction and to a concurrent extended term of six years on the retail theft conviction.

The defendant contends it was error to impose an enhanced sentence as a Class X felon because he was charged as a Class 2 felon and the indictment did not state an intent to seek an enhanced sentence.

Section 5—5—3(c)(8) of the Unified Code of Corrections (730 ILCS 5/5—5—3(c)(8) (West 1992)) provides in pertinent part: "When a defendant, over the age of 21 years, is convicted of a Class 1 or Class 2 felony, after having twice been convicted of any Class 2 or greater Class felonies in Illinois, and such charges are separately brought and tried and arise out of [*sic*] different series of acts, such defendant shall be sentenced as a Class X offender." However, section 111—3(c) of the Code of Criminal Procedure of 1963 (725 ILCS 5/111—3(c) (West 1992)) provides in pertinent part: "When the State seeks an enhanced sentence because of a prior conviction, the charge shall also state the intention to seek an enhanced sentence and shall state such prior conviction so as to give notice to the defendant. *** For the purposes of this Section, 'enhanced sentence' means a sentence which is increased by a prior conviction from one classification of offense to another higher level classification of offense set forth in Section 5—5—1 of the 'Unified Code of Corrections' ***; it does not include an increase in the sentence applied within the same level of classification of offense."

■ Reading the sections *in pari materia*, we find the State failed

to follow the requirements of section 111—3(c) and, thus, the defendant could not be sentenced as a Class X felon and should have been sentenced as a Class 2 felon. Rather than remanding for resentencing, pursuant to our authority under Supreme Court Rule 615(b) (134 Ill. 2d R. 615(b)), we reduce the defendant's sentence for burglary to seven years in the Department of Corrections.

■ Secondly, the State concedes that the trial court erred in imposing an extended-term, six-year sentence on the retail theft conviction (Class 3) since it was not the most serious class of offense of which the defendant was convicted (Class 2). (See 730 ILCS 5/5—8—2(a) (West 1992); see also *People v. Jordan* (1984), 103 Ill. 2d 192, 469 N.E.2d 569.) Therefore, pursuant to Rule 615(b) we reduce the defendant's sentence for retail theft to five years.

Therefore, for the foregoing reasons, we reduce the defendant's sentence on his burglary conviction to seven years in prison and reduce his sentence for retail theft to five years in prison; in all other respects, the judgment of the circuit court of Peoria County is affirmed.

Affirmed as modified.

LYTTON, J., concurs.

JUSTICE McCUSKEY, concurring in part and dissenting in part:

I agree with the holding that the defendant's convictions of burglary and retail theft should be affirmed. Also, I agree with the reasoning for reducing the defendant's concurrent sentence for retail theft to a term of five years. As a result, I concur with those portions of the opinion.

However, I cannot agree with the majority's conclusion that the defendant's sentence for burglary must be reduced to a term of seven years. Nor do I find that it was error to impose a Class X sentence for burglary under section 5—5—3(c)(8) of the Unified Code of Corrections (730 ILCS 5/5—5—3(c)(8) (West 1992)).

My analysis does not lead me to the conclusion that the State was required by section 111—3(c) of the Code of Criminal Procedure of 1963 (725 ILCS 5/111—3(c) (West 1992)) to state its intent to seek an enhanced sentence in the charging instrument.

The First District Appellate Court has decided this very issue in six recent opinions. In *People v. Newell* (1994), 259 Ill. App. 3d 819, 632 N.E.2d 244, *People v. Murphy* (1994), 258 Ill. App. 3d 1065, 630 N.E.2d 1257, *People v. Harris* (1994), 259 Ill. App. 3d 106, 630 N.E.2d 1047, *People v. Cole* (1993), 256 Ill. App. 3d 1, 628 N.E.2d 713, *People*

*v. Jameson* (1993), 252 Ill. App. 3d 604, 626 N.E.2d 230, *appeal allowed* (1994), 154 Ill. 2d 565, 629 N.E.2d 56, and *People v. Contreras* (1993), 241 Ill. App. 3d 1023, 609 N.E.2d 949, the first district held that section 111—3(c) is *not* applicable when a defendant is given an enhanced sentence pursuant to section 5—5—3(c)(8). The court in *Cole* explained:

> "[Section 111—3(c)] applies to those situations where the enhanced Class X sentence is triggered by defendant's prior conviction, and the class of the offense is increased to a higher classification. Where the sentence, but not the classification of the offense, is enhanced by defendant's prior convictions, there is *no* statutory requirement that the State notify defendant of its intention to seek an enhanced penalty." (Emphasis added.) *Cole*, 256 Ill. App. 3d at 5-6, 628 N.E.2d at 716-17.

Section 5—5—3(c)(8) provides that a "defendant shall be *sentenced* as a Class X offender" because of the previous convictions. (Emphasis added.) (730 ILCS 5/5—5—3(c)(8) (West 1992).) Based upon this language, I agree with the first district's analysis that the classification of the offense does not change because of the previous convictions. It is *only the sentence* which is enhanced by the previous convictions. As noted by the first district, the language of section 111—3(c) explicitly excludes situations where the sentence is increased because of a prior conviction, but the classification of the offense remains the same. *Newell*, 259 Ill. App. 3d at 824, 632 N.E.2d at 248; *Harris*, 259 Ill. App. 3d at 111-12, 630 N.E.2d at 1050-51; *Contreras*, 241 Ill. App. 3d at 1023, 609 N.E.2d at 950.

For the reasons indicated, I agree with the recent decisions of the first district and would affirm the Class X sentence. Accordingly, I respectfully dissent from that portion of the majority opinion which reduces the defendant's sentence for burglary to a term of seven years' imprisonment.