274

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT SZYDLOSKI, Defendant-Appellant.

Third District    No. 3—94—0890

Opinion filed August 16, 1996.

HOLDRIDGE, P.J., dissenting.

Ronald Packowitz (argued), of State Appellate Defender's Office, of Ottawa, for appellant.

Raymond Kimbell III, State's Attorney, of Galesburg (John X. Breslin and Rita K. Mertel (argued), both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LYTTON delivered the opinion of the court:

Defendant Robert Szydloski was charged with two counts of burglary (720 ILCS 5/19—1(a) (West 1994)) and two counts of theft (720 ILCS 5/16—1(a) (West 1994)). Following a jury trial, the defendant

was convicted on all counts and sentenced to six years in the Department of Corrections. We reverse and remand for a new trial.

On July 5, 1994, the defendant and his wife, Catherine Szydloski, went to two grocery stores, Eagle and Giant Foods. The pair were driven to these locations by a neighbor, Glen Staley. At defendant's trial, Staley testified that when he picked up the Szydloskis from their residence, the defendant was in possession of a tote bag which he placed in Staley's car. The defendant then went to get his wife. When the pair returned they were carrying a cardboard box, which they placed in the car.

Staley first drove to the Eagle store. As the Szydloskis exited the car, the defendant handed the tote bag to his wife. Staley stayed in the car. When the pair returned to the car, the defendant sat in the front passenger seat and his wife sat in the back. Catherine Szydloski then removed meat from the tote bag and placed it in the cardboard box.

The defendant then had Staley drive to Giant Foods, where all three entered the store. Staley testified that the defendant and his wife placed merchandise in the tote bag. Staley reported what he saw to the manager. Although store personnel did not see any shoplifters in the store, they found meat, cigarettes and other merchandise from Eagle and Giant in Staley's car.

The State presented evidence that during the investigation of the case, police interviewed Staley, who identified the defendant and his wife. The defendant was then questioned. He told the police that he was at the two stores with his wife, but he denied taking any merchandise.

Catherine Szydloski testified on behalf of the defendant. She stated that she stole the merchandise while her husband was not looking. She also claimed that Staley had entered the Giant store for the purpose of stealing cigarettes. She insisted that her husband had no knowledge of her plans to steal merchandise; instead, he first learned of the crimes after the three had returned to the car. The defendant protested, exited the car, and began to walk home. Catherine testified that she followed after her husband, and the two argued as they walked.

The State attempted to impeach Catherine Szydloski by calling Officer Lisa Petentler as a witness. Petentler testified that Catherine had previously stated she and Robert entered the store with the intent to steal the meat.

The jury convicted the defendant on all counts, and the defendant filed this appeal.

On appeal, the defendant argues (a) the trial judge erred in

instructing the jury regarding accomplice testimony pursuant to Illinois Pattern Jury Instructions, Criminal, No. 3.17 (3d ed. 1992) (hereinafter IPI Criminal 3d), (b) the defendant was not proven guilty of burglary since the State failed to establish that he lacked authority to enter the stores, (c) the prosecutor committed reversible error during closing argument when he referred to the defendant and his wife as "professional thieves," and (d) defense counsel erred in not requesting drug treatment as a part of defendant's sentence.

I

■ Initially we address the trial judge's use of the accomplice instruction, which states:

"When a witness says that he was involved in the commission of a crime with the defendant, the testimony of that witness is subject to suspicion and should be considered by you with caution. It should be carefully examined in light of the other evidence in the case." IPI Criminal 3d No. 3.17.

The defendant argues that use of this instruction was improper because it applies only to prosecution witnesses, and here the instruction was used to improperly discredit a defense witness, Catherine Szydloski. Alternatively, defendant argues that even if the accomplice instruction may be applied to a defense witness, it did not pertain to Catherine Szydloski because she never testified that the defendant was involved in the commission of her crimes.

In *People v. Perryman*, 80 Ill. App. 3d 204, 399 N.E.2d 727 (1980), this court held that the use of the accomplice instruction against a defense witness constituted plain error. Recently, however, in *People v. Rivera*, 166 Ill. 2d 279, 652 N.E.2d 307 (1995), the supreme court held that application of this instruction is not limited to prosecution witnesses. The court rejected the notion that the testimony of a prosecution witness should be scrutinized more closely than the testimony of a defense witness. *Rivera*, 166 Ill. 2d at 292, 652 N.E.2d at 313.

Even so, IPI Criminal 3d No. 3.17 must properly apply to a witness before it can be given at all. In *People v. Krush*, 120 Ill. App. 3d 614, 618, 458 N.E.2d 650, 653 (1983), the appellate court held that "total exoneration" of a defendant by a witness precludes the giving of the accomplice instruction as to that witness. In *Krush*, an admitted burglar attempted to exonerate the defendant, but his testimony failed to do so. Thus, the accomplice's testimony "substantially corroborated the State's evidence [by] placing the defendant at the scene of the burglary loading the stolen property in defendant's truck." *Krush*, 120 Ill. App. 3d at 619, 458 N.E.2d at 653.

In *People v. Dodd*, 173 Ill. App. 3d 460, 527 N.E.2d 1079 (1988), the defendant's fiancée testified that she stole a ring from a jewelry

store. The witness claimed that the defendant had driven her to the store, but was unaware of her plan to steal the ring. Although this testimony corroborated the State's evidence to the extent that it placed the defendant at the scene of the crime, the appellate court determined the crucial question to be whether the defendant knowingly aided his fiancée in the commission of the offense. Since the testimony of the fiancée tended to exonerate the defendant on this question, IPI Criminal 3d No. 3.17 was confusing to the jury and prejudiced the defense by unfairly discrediting its principal witness. *Dodd*, 173 Ill. App. 3d at 467, 527 N.E.2d at 1084.

*Dodd* is logically persuasive and factually similar to the instant case. The testimony of Catherine Szydloski placed the defendant at the scene, and the defendant admitted that he was there. On the crucial issue of the defendant's knowledge, however, Catherine steadfastly maintained that her husband did not know of the scheme to steal the merchandise. While the jury was free to reject these claims, it was error to give the accomplice instruction since the defendant's wife did not say that she was "involved in the commission of a crime with the defendant." IPI Criminal 3d No. 3.17.

The dissent cites *Rivera* for the proposition that IPI Criminal 3d No. 3.17 may be given whenever a "witness's credibility is suspect and his testimony does not completely exonerate the defendant." 283 Ill. App. 3d at 280. It finds that this standard was satisfied through the testimony of Officer Lisa Petentler, regarding out-of-court statements allegedly made by Catherine Szydloski. This analysis, however, does not take the language of the instruction into account. When Officer Petentler testified about Catherine Szydloski's alleged statements, this did not constitute a situation where "a *witness* says that *[s]he* was involved in the commission of a crime with the defendant, the *testimony of that witness* is subject to suspicion." (Emphasis added.) IPI Criminal 3d No. 3.17. No one has claimed that Officer Petentler was a witness alleged to have participated in the crime.

The dissent's reliance upon *Rivera* is misplaced. In *Rivera*, a defense witness attempted to exonerate the defendant; however, unlike the case at bar, that witness's testimony in earlier proceedings had implicated the defendant. This testimony was properly admitted as substantive evidence of Rivera's guilt. *Rivera*, 166 Ill. 2d at 289-91, 652 N.E.2d at 312, citing 725 ILCS 5/115—10.1 (West 1992). Thus, in contrast to the situation presented here, *Rivera* involved a situation

where a defense witness said that he was involved in a crime with the defendant.[1]

We reverse the defendant's convictions and remand for a new trial.

## II

■ The defendant also contends that the State has failed to meet its burden of proof on the burglary charges. Specifically, the defendant argues that the State failed to prove an essential element of burglary: that the defendant lacked the requisite authority at the time he entered the store. See 720 ILCS 5/19—1(a) (West 1994).

When faced with a challenge to the sufficiency of the evidence, this court must examine the evidence in the light most favorable to the State. *People v. Collins*, 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277 (1985). Here, the evidence showed that prior to being driven to the two stores, the defendant was in possession of a tote bag which served as the means by which stolen merchandise was concealed and removed from the stores. Thus, the jury could reasonably conclude that the defendant possessed the intent to steal merchandise before he entered the stores.

In *People v. Smith*, 264 Ill. App. 3d 82, 637 N.E.2d 1128 (1994), this court affirmed a burglary conviction of a defendant who entered a clothing store during general business hours and stole merchandise. The defendant argued that the conviction must be reversed because there was no unauthorized entry as required by the burglary statute. Under such circumstances, this court stated that the question of whether a burglary conviction can stand "rests upon whether the ev-

---

[1]The dissent cites the following colloquy as constituting a failure by Catherine to "completely exonerate" the defendant:

> "Q. And did you tell her [Petentler] that you said that she and Robert did go to Eagles in the car driven by Mr. Staley and stole several packages of meat? Did you tell her that?
>
> A. Yes. Yes." 283 Ill. App. at 280.

However, since the prosecutor's question was compounded and ambiguous, it is not clear whether Catherine was agreeing that she told Officer Petentler that Robert went to Eagles, that Staley drove the car, that Catherine stole the meat, or that Catherine and Robert stole the meat. Immediately prior to this response, the witness's testimony focused upon Catherine and Robert's physical presence at the Eagle and Giant stores, not the defendant's alleged participation in the crimes. Throughout the balance of her testimony, Catherine insisted that Robert was *not* aware of or involved in the thefts. We decline to use a problematic response to a complicated question as a basis for giving the jury IPI Criminal 3d No. 3.17.

idence is sufficient to show an intent to commit a felony or theft at the time of entry onto the premises of the business establishment." *Smith*, 264 Ill. App. 3d at 87, 637 N.E.2d at 1131. We affirmed the burglary conviction because the State presented evidence of such intent, including testimony that the defendant was seen entering the store with an empty plastic bag. *Smith*, 264 Ill. App. 3d at 87-88, 637 N.E.2d at 1132.

In *People v. Stager*, 168 Ill. App. 3d 457, 522 N.E.2d 812 (1988), the court affirmed the burglary conviction of a defendant who entered an Eagle store with a nylon bag and then filled it with merchandise, including cigarettes and meat.

As in *Smith* and *Stager*, the State in this case presented evidence that prior to entering the stores, the defendant possessed the bag that was subsequently used to conceal and remove stolen merchandise. Thus, a jury could reasonably conclude beyond a reasonable doubt that the defendant possessed the intent to commit a theft at the time he entered each store.

### III

Because we have reversed the defendant's conviction on other grounds, we find it unnecessary to address the propriety of the prosecutor's comments or the defendant's eligibility for drug treatment. The judgment of the circuit court of Knox County is reversed and remanded for a new trial.

Reversed and remanded.

McCUSKEY, J., concurs.

PRESIDING JUSTICE HOLDRIDGE dissenting:

I must respectfully dissent from the decision of the majority, as I believe that it was within the circuit court's discretion to give the accomplice instruction, IPI Criminal 3d No. 3.17.

Once a witness has been shown to be an accomplice, the jury may be instructed that the witness's testimony is subject to suspicion and should be considered with caution. *People v. Newell*, 103 Ill. 2d 465, 470 (1984).

The test applied to determine whether a witness is an accomplice is whether the witness could have been indicted for the offense either as a principal or on an accountability theory. *People v. Lashmett*, 126 Ill. App. 3d 340, 347 (1984). In the instant case, the jury heard Catherine testify that she was arrested on and pled guilty to the charges stemming from the thefts at Eagle and Giant. These were the same

occurrences for which Robert was charged. It was established, therefore, that Catherine was an accomplice, and the circuit court did not err in giving the accomplice instruction.

The majority correctly points out that the application of the accomplice instruction is not limited to prosecution witnesses. *People v. Rivera*, 166 Ill. 2d 279, 292 (1995), citing *People v. Touhy*, 361 Ill. 332, 352-53 (1935). However, I believe the *Rivera* court also held that a circuit court should have discretion to give the accomplice instruction where the witness's credibility is suspect and his testimony does not completely exonerate the defendant. *Rivera*, 166 Ill. 2d at 293.

In *Rivera*, the defense accomplice witness, Norman, and the defendant were both charged with murder. As in the present situation, Norman and the *Rivera* defendant were separately tried. At Norman's murder trial, he implicated defendant as the murderer. Thereafter, at defendant's murder trial, Norman completely exonerated defendant, alleging that he lied at his own murder trial to avoid conviction.

Despite this later exoneration of defendant by Norman, our supreme court in *Rivera* stated:

> "We continue to adhere to this court's position in *Touhy*. *** Norman was a convicted murderer and admitted perjurer, and his testimony at Rivera's trial was inconsistent with his prior testimony at his own trial. Norman's credibility was clearly suspect, and in such a case, the trial judge should have discretion to decide whether to advise the jury to accept an accomplice's testimony with caution." *Rivera*, 166 Ill. 2d at 293.

In the case at hand, like Norman in *Rivera*, Catherine's testimony did not completely exonerate Robert. During the People's cross-examination of Catherine, she was confronted with her conversation with Officer Lisa Petentler (Petentler). Catherine's cross-examination testimony in response to the People's questions was as follows:

> "Q. And did you tell her [Petentler] that you said that she and Robert did go to Eagles in the car driven by Mr. Staley and stole several packages of meat? Did you tell her that?
> A. Yes. Yes.
> Q. Okay. Saying, that she and Robert. She being yourself?
> A. Yes."

Although Catherine thereafter denied making such statements to Petentler, her response to the People's compound question was "yes" to both parts of the question. That being, yes that she did tell Petentler that she and Robert went to Eagle in a car driven by Staley, and yes that she did tell Petentler that she and Robert stole several packages of meat.

Petentler testified on rebuttal that Catherine had told her that she and Robert entered the stores with the intent to steal meat. She stated that Catherine indicated they were having some hard times, and their family needed food.

Although the People's question to Catherine on cross-examination may have been more artfully posed, I do not find Catherine's response to be problematic. Instead, I believe that it adds veracity to Petentler's rebuttal testimony, and, therefore, Catherine did not completely exonerate Robert. This fact distinguishes the present situation from the authority of *People v. Dodd*, 173 Ill. App. 3d 460 (1988), and I find *Rivera* to be controlling.

As in *Rivera*, because Catherine did not completely exonerate Robert, and considering her credibility was suspect, I believe that the circuit court should have the discretion to decide whether to advise the jury to accept Catherine's testimony with caution. Accordingly, the giving of the accomplice instruction was proper, and I would affirm Robert's convictions.

For the reasons discussed, I respectfully dissent.