# Illinois Official Reports

## Appellate Court

---

### *People v. Johnson*, 2018 IL App (3d) 150352

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DARREN JOHNSON, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-15-0352 |
| Filed | January 29, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Whiteside County, No. 14-CF-254; the Hon. John L. Hauptman, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Gilbert C. Lenz, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Terry Costello, State's Attorney, of Morrison (Patrick Delfino, Lawrence M. Bauer, and Dawn Duffy, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE SCHMIDT delivered the judgment of the court, with opinion.<br>Presiding Justice Carter and Justice Holdridge concurred in the judgment and opinion. |

**OPINION**

¶ 1    On July 22, 2014, Rock Falls police arrested defendant, Darren Johnson, for shoplifting $76.91 worth of clothing from a local Wal-Mart. The State charged defendant with retail theft and burglary. After his first trial resulted in a hung jury, a second jury acquitted defendant of retail theft but convicted him of burglary. The Whiteside County circuit court sentenced defendant to eight years in prison. We reverse.

¶ 2                                BACKGROUND

¶ 3    The State charged defendant by information with burglary and retail theft on July 23, 2014. Defendant waived his right to counsel on August 26. His first trial resulted in a hung jury on October 22. His second trial began on November 18. Before opening statements, the trial court prohibited the jury from taking notes. The judge told the jury: "I do not allow note taking ***. I am a firm believer *** in the collective memory of the jury. *** [A]nd I do not want you to be distracted by note taking."

¶ 4    During the State's case, Amanda Peppers testified that she saw defendant and another man inside the Rock Falls Wal-Mart on July 22, 2014, while she was shopping with her nephew. The two men "were kind of walking around with a bunch of stuff in their hands," and "they would kind of veer off in other directions" when Peppers approached them. As she left the store and walked to her car, Peppers saw the two men retrieve backpacks from behind vending machines outside the store's entrance. The men removed stolen items that they concealed in their clothes and placed them in the backpacks. Peppers called the police.

¶ 5    Before police arrived, Peppers saw the men walk toward a Coinstar machine in the store's vestibule. After the men briefly reentered the store without their backpacks, Peppers saw defendant exit the store, retrieve his backpack, and walk toward the parking lot.

¶ 6    Officer James Hollaway of the Rock Falls Police Department testified that he responded to Peppers's call with Sergeant John Worcester and Officer Jarrett Ludwig at 7:16 p.m. While Worcester and Ludwig walked toward the store's entrance, Hollaway sat in the parking lot and observed defendant retrieve his backpack from atop the Coinstar machine before he walked toward the parking lot. Hollaway stopped defendant to ask him if he took items from the store without paying for them; defendant lowered his head and answered "yes."

¶ 7    Ludwig testified that he escorted defendant to the manager's office inside the store. He read defendant his *Miranda* rights with Worcester and Donna Courtney, the Wal-Mart manager, present. Ludwig searched defendant and found 14 items of girls' clothing in his backpack and on his person.

¶ 8    Courtney testified that defendant told her he took the clothes because his ex-girlfriend prohibited him from seeing their daughter unless he bought her school clothes. Courtney described defendant as "very distraught." He offered to clean the windows, clean the floor, or provide whatever labor necessary to repay the store for the stolen clothes. Courtney processed a receipt showing the stolen items' retail value totaled $76.91.

¶ 9    She also copied footage from six surveillance cameras onto a digital versatile disc (DVD). None of the cameras covered the girls' clothing section. The State played portions of the DVD that contained footage from four of the six cameras. In relevant part, the video showed defendant entering the vestibule area, placing a backpack on the Coinstar machine, and

retrieving his backpack when he left the store. Defendant elected not to testify on his own behalf.

¶ 10    During the first day of deliberations, the jury sent the court four notes. The first note requested to see Peppers's written police statement (which the State did not admit into evidence) and to review Courtney's DVD. With the parties' consent, the court declined the jury's requests. The second note requested Ludwig's police report. The court declined the jury's request without objection. The third note reported that the jury reached a verdict on one charge but remained split on the other.

¶ 11    The jury's final note reported that the jury reached an impasse; the jury again requested to review Courtney's DVD to help resolve the deadlock. Without objection, the court again declined the jury's request to review the DVD. The court also issued a *Prim* instruction (see *People v. Prim*, 53 Ill. 2d 62, 71-76 (1972)). At 10:20 p.m. on November 19, the court sent the jury home.

¶ 12    Proceedings resumed at 9 a.m. the following morning. At 10:30 a.m., the jury returned its verdict. It found defendant not guilty of retail theft but guilty of burglary. The court appointed posttrial counsel pursuant to defendant's request.

¶ 13    The court denied defendant's posttrial motion before his sentencing hearing on March 27, 2015. Although burglary is a Class 2 felony with a three-to-seven-year sentencing range (720 ILCS 5/19-1(b) (West 2014); 730 ILCS 5/5-4.5-35(a) (West 2014)), the court sentenced defendant as a Class X offender because his criminal record contained prior theft and burglary felony convictions within 20 years. 730 ILCS 5/5-4.5-95(b) (West 2014). The court sentenced defendant to eight years in prison. It denied defendant's motion to reconsider his sentence on May 13, 2015.

¶ 14    On appeal, defendant raises four challenges. The first two challenges attack the sufficiency of the State's evidence on both burglary elements—entering the store without authority and intending to commit theft therein (720 ILCS 5/19-1 (West 2014)). Defendant also seeks a new trial because the court violated section 115-4(n) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-4(n) (West 2014)) when it prohibited jurors from taking notes during trial. Finally, he seeks to reduce his monetary assessments from $557 to $490 because the trial court "failed to grant the mandatory $5-per-day credit against three [assessments]." We address the relevant issues below.

¶ 15                                          ANALYSIS
¶ 16                              I. Sufficiency of the Evidence
¶ 17    Defendant does not dispute the facts underlying his conviction. Instead, he claims that they cannot support a burglary conviction as a matter of law. The crux of his argument is that he *could not* enter Wal-Mart "without authority" because he entered and exited the store during business hours and remained in designated public areas. This argument presents a question of statutory construction that we review *de novo*. *People v. Bradford*, 2016 IL 118674, ¶¶ 14-15.

¶ 18    The burglary statute identifies two ways in which a person commits the offense: "A person commits burglary when without authority he or she knowingly enters or without authority remains within a building, *** or any part thereof, with intent to commit therein a felony or theft." 720 ILCS 5/19-1(a) (West 2014). To commit either manifestation of burglary, the offender must lack authority to be present within the building.

¶ 19 Defendant relies on *Bradford*, 2016 IL 118674, where our supreme court held that an offender commits "burglary by remaining" only if "he exceeds his physical authority to be on the premises." *Id.* ¶ 31. Defendant claims *Bradford* applies to either manifestation of burglary: "[A]n individual who enters a building lawfully, shoplifts merchandise within areas which are open to the public, then leaves during business hours, is guilty of ordinary retail theft." *Id.*

¶ 20 The State argues that defendant never entered the building lawfully; therefore, *Bradford* does not require reversal. The State relies on the "limited-authority doctrine," which states that "one's otherwise valid authority to be in certain premises is vitiated when that individual acts in a manner inconsistent with the authority originally granted." *People v. Wilson*, 155 Ill. 2d 374, 378 (1993). According to the State, shoplifters who form the intent to steal before entering a store lack authority to enter. They commit burglary the instant they cross the building's threshold.

¶ 21                            A. The Limited Authority Doctrine

¶ 22 The limited authority doctrine, relied upon by the State, took shape before Illinois passed its retail theft statute in 1975 (720 ILCS 5/16-25 (West 2014)). In *People v. Schneller*, 69 Ill. App. 2d 50 (1966), the State charged defendant with burglary after he stole antique guns from a public museum's showcase. Police responded to an alarm at the museum. They found a screwdriver, long-nosed pliers, sunglasses, a handkerchief, a flashlight, an automatic pistol, and the previously displayed antique guns in a duffle bag on the floor. A museum employee testified that he encountered the defendant after working hours two days prior—in a restricted area where the museum stored "prized possessions." Although defendant attempted the heist during working hours, the court held that "it would be contrary to reason and ordinary human understanding" to conclude the defendant possessed authority to enter the museum for "unlawful or criminal" purposes. *Id.* at 54. For clarity's sake, we make clear that we are not questioning the holding in *Schneller*, as there the court addressed materially different facts.

¶ 23 Two years later, our supreme court applied the doctrine in *People v. Weaver*, 41 Ill. 2d 434 (1968). In *Weaver*, police discovered the defendant standing near an open Laundromat vending machine. Police found keys to the vending machine inside the defendant's vehicle and $50 worth of coins in his pockets. The court held that "authority to enter a business building, or other building open to the public, extends only to those who enter with a purpose consistent with the reason the building is open." *Id.* at 439. Notably, the defendants in *Schneller* and *Weaver* both used burglary tools to access nonpublic areas—a locked museum display and a vending machine. These facts distinguish those cases from the one before us.

¶ 24                            B. *Bradford* and Retail Theft

¶ 25 The supreme court recently held that the limited authority doctrine does not apply in "burglary by remaining" shoplifting cases. *Bradford*, 2016 IL 118674. In *Bradford*, the defendant walked into a Wal-Mart with another man and immediately stole two DVDs from a display near the cash registers. He took these DVDs to the customer service desk and "exchanged" them for a Wal-Mart gift card. Next, he walked to the men's clothing department where he selected a hat, removed the price tag, and wore it. He then retrieved a pair of shoes from the shoe department and placed them in a Wal-Mart bag that he concealed in his pocket—presumably to represent that he already purchased the shoes. He wore the hat and carried the shoes to the cash registers, where he rejoined the other man. He paid for the man's

- 4 -

merchandise with the gift card he received in exchange for the DVDs and exited the store without paying for the hat or shoes.

¶ 26 The appellate court, citing *Weaver*, applied the limited authority doctrine and held that the defendant remained in the store without authority once he formed the intent to shoplift. *People v. Bradford*, 2014 IL App (4th) 130288, ¶¶ 31, 33-34. The supreme court reversed the appellate court's decision.

¶ 27 The court emphasized that the legislature enacted the retail theft statute in 1975, 14 years after enacting the burglary statute and 7 years after *Weaver*. Based on this timeline, "it strains logic to presume that the legislature intended most incidents of retail theft to be prosecuted as burglaries." *Bradford*, 2016 IL 118674, ¶ 28. The court reasoned that charging every shoplifter with burglary by remaining would "effectively negat[e] the retail theft statute." *Id.* ¶ 27. Because stores are often "building[s]" or trailers (720 ILCS 5/19-1(a) (West 2014)), virtually every retail theft would also constitute a burglary if one's "authority" hinged on whether he or she intended to shoplift merchandise.

¶ 28 To be fair, a long line of cases supports the State's position that one who intends to commit retail theft lacks authority to enter a store. See, *e.g.*, *People v. Rudd*, 2012 IL App (5th) 100528, ¶ 13; *People v. Bridgewater*, 388 Ill. App. 3d 787, 801 (2009); *People v. Szydloski*, 283 Ill. App. 3d 274, 278 (1996); *People v. Smith*, 264 Ill. App. 3d 82, 87 (1994); *People v. Hopkins*, 229 Ill. App. 3d 665, 670-71 (1992); *People v. Stager*, 168 Ill. App. 3d 457, 459 (1988); *People v. Boose*, 139 Ill. App. 3d 471, 473 (1985). As explained below, we feel that *Bradford* changes the law and effectively overrules the law upon which the State relies.

¶ 29 The retail theft statute's punishments range from a Class A misdemeanor to a Class 2 felony. 720 ILCS 5/16-25 (West 2014). The statute considers several factors, including the value and nature of the stolen merchandise, the defendant's criminal history, and how the defendant stole the property. *Id.*; *Bradford*, 2016 IL 118674, ¶ 27. A first-time minor shoplifting offense under the retail theft statute could warrant up to 364 days in jail.

¶ 30 On the other hand, the burglary statute "does not consider any of these proportionality factors." *Bradford*, 2016 IL 118674, ¶ 27. Thus, the limited authority doctrine provides a prosecutor discretion to charge and convict a first time offender who enters a store with intent to steal a candy bar with burglary, a felony, or retail theft, a misdemeanor. Courts should not interpret criminal statutes to provide prosecutors unbridled discretion to arbitrarily charge some shoplifters with Class 2 felony burglary and others with Class A misdemeanor retail theft under similar circumstances; " 'prosecutorial discretion is not a reason for courts to give improbable breadth to criminal statutes.' " *Freeman v. Quicken Loans, Inc.*, 566 U.S. 624, 633 (2012) (quoting *Abuelhawa v. United States*, 556 U.S. 816, 823 n.3 (2009)).

¶ 31 Another reason not to "give improbable breadth" to our burglary statute in retail theft cases is that the retail theft statute occupies the field of shoplifting crimes. Particularly relevant to this case, the statute covers situations where shoplifters knowingly transfer merchandise "to any other container with the intention of depriving the merchant of the full retail value." 720 ILCS 5/16-25(a)(3) (West 2014). It also covers situations where shoplifters knowingly use a "theft detection shielding device," which is "any laminated or coated bag or device designed and intended to shield merchandise from detection by an electronic or magnetic theft alarm sensor." *Id.* § 16-25(a)(7), (e). Obviously, persons who enter a store with any of these items formed the intent to commit theft before entering. The statute contemplates all manifestations of retail theft, regardless of whether shoplifters form the requisite intent before or after entering

the store.

¶ 32                    C. *Bradford*'s Application to the Instant Case

¶ 33    The State claims that this case is distinguishable from *Bradford* because the State charged defendant with "burglary by entering," whereas *Bradford* addressed "burglary by remaining." This attempt to distinguish *Bradford* does not logically follow the supreme court's rationale. Under either manifestation of burglary, the offender must lack "authority." If forming the intent to shoplift does not revoke one's authority to remain in a store, then it cannot logically revoke one's authority to enter either. We suspect that it is a miniscule percentage of shoplifters who form the intent to steal only after entering a store.

¶ 34    The State's position also ignores the purpose for criminalizing burglary. The "crime of burglary reflects a considered judgment that especially severe sanctions are appropriate for criminal invasion of premises under circumstances likely to terrorize occupants." Model Penal Code § 221.1 (Am. Law Inst. 2017) (Explanatory Note). In other words, burglary aims to punish circumstances where a trespass and unwelcomed criminal intent combine to harm the victim more than either individual crime; the whole is greater than the sum of its parts.

¶ 35    Applying the limited authority doctrine to shoplifting cases disregards the purpose of criminalizing burglary, negates the retail theft statute, and conflicts with *Bradford*. We hold that *Bradford*'s physical authority test applies to all retail theft cases, regardless of when the defendant forms the intent to shoplift.

¶ 36    In this case, the State alleged that defendant stole $76.91 worth of merchandise from Wal-Mart. Defendant entered the store during its business hours, remained in public areas while inside, and left the store before it closed. He never exceeded his physical authority. We reverse his burglary conviction.

¶ 37                          II. Juror Note Taking

¶ 38    Although we need not decide the other issues presented, we feel compelled to briefly address defendant's claim regarding juror note taking. Before opening statements, the trial court told the jury:

> "I, I do not allow note taking and I have a, I have a reason for this. I am a firm believer in the ability of jurors to remember the testimony and I, I am a firm believer in the collective memory of the jury. That's why we have 12 people, I mean it's, it's meant to be give and take and that sort of thing, and my concern about taking notes is that sometimes people are so busy concentrating on taking, on writing down what was said that they may miss something else that was said. Or, somebody might be worried that, well, this lady or this man took better notes than me. Well that's what the whole process is about, is to work through these things collectively, and I do not want you to be distracted by note taking."

¶ 39    Section 115-4(n) of the Code states, *inter alia*: "The members of the jury *shall* be entitled to take notes during the trial, and the sheriff *** shall provide them with writing materials for this purpose." (Emphasis added.) 725 ILCS 5/115-4(n) (West 2014). This statutory provision is mandatory. *People v. Strong*, 274 Ill. App. 3d 130, 135-37 (1995). It is a measure to protect defendants' constitutional rights to fair trials. It is also the jurors' right. See *People v. Layhew*,

139 Ill. 2d 476, 492-93 (1990). Trial courts lack discretion to ignore this direct mandate.

¶ 40                                        CONCLUSION
¶ 41         For the foregoing reasons, we reverse the judgment of the circuit court of Whiteside County.

¶ 42         Reversed.