# Illinois Official Reports

## Appellate Court

---

### *People v. Holt*, 2019 IL App (3d) 160504

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FREDERICK L. HOLT, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-16-0504 |
| Filed | March 7, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Whiteside County, No. 14-CF-253; the Hon. Stanley B. Steines, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part. |
| Counsel on Appeal | James E. Chadd, Peter A. Carusona, and James Wozniak, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>Terry A. Costello, State's Attorney, of Morrison (Patrick Delfino, David J. Robinson, and Justin A. Nicolosi, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE McDADE delivered the judgment of the court, with opinion.<br>Justice O'Brien concurred with the judgment and opinion.<br>Justice Lytton concurred in part and dissented in part, with opinion. |

¶ 1 The defendant, Frederick L. Holt, was convicted of burglary (720 ILCS 5/19-1(a) (West 2014)) and retail theft (*id.* § 16-25(a)(1))) and was sentenced to concurrent prison terms of eight and three years, respectively. On appeal, Holt argues that (1) the State failed to prove that he committed the offense of burglary, (2) the State failed to prove him guilty beyond a reasonable doubt of retail theft, and (3) he is entitled to a new trial due to prosecutorial misconduct in closing arguments. We affirm in part and reverse in part.

¶ 2 FACTS

¶ 3 On July 23, 2014, the State charged Holt with burglary and retail theft. The charges stemmed from an incident that took place at a Walmart in Rock Falls on July 22, 2014. The State alleged that on July 22, 2014, Holt (1) entered Walmart without authority and with the intent to commit theft and (2) stole 11 T-shirts, 3 packages of socks, and a dress, all of which had a total value of less than $300.

¶ 4 The circuit court held a jury trial on February 11 and 12, 2015. Amanda Peppers testified that she was shopping with her nephew in the Rock Falls Walmart on July 22, 2014. When she was in the parking lot getting ready to leave, her nephew pointed out two males, one of whom she identified as Holt, who were coming out of the store. Peppers stated that she observed the males reach behind the soda machines, pull out backpacks, take items out of their clothes, and place the items in the backpacks. She testified that she observed Holt take "something long and orange, like a fabric of some sort" out of his pants and place it in a red and black backpack. Peppers further stated that the two males walked back into the vestibule by the Coinstar machine, but she could not see what they were doing. Then, the males walked back into the store. She stated that the males carried the backpacks into the vestibule by the Coinstar machine, but when they reentered the store, they were no longer carrying the backpacks.

¶ 5 Peppers called the police. Subsequently, she saw the males exit Walmart separately. When Holt left the store, he was not carrying anything. He sat on a bench outside the door.

¶ 6 After the police arrived and arrested the other male, Peppers exited her vehicle and approached Rock Falls police officer James Hollaway. While they were talking, she noticed a red and black backpack on top of the Coinstar machine.

¶ 7 On cross-examination, Peppers stated that she saw the males inside the store while she was shopping, but she did not see them steal anything. Peppers also admitted that she "may have" told Hollaway that she "was tired of these people going in the store and stealing stuff." She acknowledged that both males were black.

¶ 8 Hollaway testified that when he arrived on the scene, he noticed a red and black backpack on the Coinstar machine in the store's vestibule. He took the backpack over to Holt and, after being informed that Holt had already been Mirandized (see *Miranda v. Arizona*, 384 U.S. 436 (1966)), asked if it was his; Holt said no. Hollaway told Holt the backpack was abandoned property, so he opened it and found girl's clothing and a transit identification card that did not bear Holt's name. When asked about the ID card, Holt said it was his friend's card.

¶ 9 Hollaway testified that the backpack contained three packs of socks, a dress, a pair of pants, and a two-piece shirt set. He described the packs of socks and noted that one of them did not have a sticker on it. He stated that neither the dress nor the pants had tags on them, but the

exhibit contained a tag that he believed was from the dress. He read the tag: "Hello Kitty thirteen ninety seven, high low dress." He also described the shirt set as "Faded Glory, two-piece set size five, says Walmart.com, rack 15, $7.92." There was an owl on the shirt that matched owls on the purple pants. Hollaway also described the 11 T-shirts that were found on Holt's person. All of the T-shirts were priced at $4.88 or $4.97.

¶ 10    Hollaway testified that he concluded the items had been stolen because there were no receipts and no proof that Holt had paid for the items. He stated that the store manager had scanned the items and determined that they all were items offered for sale by Walmart. He admitted that he did not scan the area or search garbage cans for any receipts.

¶ 11    Rock Falls police officer John Worcester testified that when he arrived on the scene, he saw a black male fitting a description of a suspect grab a backpack from on top of a Coinstar machine and walk away briskly when he saw the police officers approaching. Worcester approached Holt, who fit the description of the other suspect. Holt told Worcester his name, gave him a state identification card, and denied the red and black backpack was his. However, when asked by the police why he had someone else's ID card, Holt stated that his friend knew he had the ID. Worcester testified "[w]e took that as possibly him explaining that he was traveling using that or that he wasn't in trouble by having someone else's ID." Worcester stated the backpack contained 11 T-shirts that appeared to be made for young girls.

¶ 12    Worcester also noticed a large bulge in the front of Holt's pants. When asked about it, Holt stated that he had clothing in his pants. Because Holt had been arrested and Mirandized by that point, Worcester performed a pat-down of Holt, felt soft material in his pants, and removed the items, which were three packs of socks and a dress. Holt did not offer any explanation as to why the items were in his pants; Worcester testified that Holt "just kept denying it even though that is not how he carries things around."

¶ 13    Donna Courtney, the Rock Falls Walmart manager, testified that she determined that the items found in the red and black backpack and on Holt's person were items that were offered for sale by Walmart. She stated that the items were all located in the girl's wear section, which was an area not covered by surveillance cameras. A recording from the store's surveillance cameras was admitted into evidence and played for the jury. No identification of the individuals on the recording was made at trial; the prosecutor simply asked Courtney "did you have any interaction with Mr. Holt who is seen on the video?" Courtney said no. Defense counsel did not object.

¶ 14    During closing argument, defense counsel noted that Holt did not say anything to the police when they initially approached him. Counsel then stated: "Mr. Holt is under no obligation to talk to the police officers. Now, you are saying God, if I was [*sic*] innocent, I would jump up and down and scream. Well, you don't have to do that."

¶ 15    In rebuttal, the prosecutor referred to the items found in Holt's pants and stated:

"He never gave an explanation as to why they were in his pants when the officers asked.

[Defense counsel] is right, he doesn't have to, but if I didn't commit a crime, I would say something to the officers. I would offer that explanation."

Defense counsel did not object.

¶ 16    The jury returned guilty verdicts on both charges.

¶ 17    Defense counsel filed a motion for new trial in which he alleged that the above-quoted statements made by the prosecutor in rebuttal argument constituted misconduct. At the hearing on the motion, the circuit court found that the prosecutor's statements violated Holt's constitutional right to remain silent and therefore constituted error. After noting that the error was neither corrected by the court *sua sponte* nor objected to by defense counsel, the court undertook a harmless error analysis. The court mentioned that the statements were only two sentences of a larger argument that came during rebuttal and that the jury was given an instruction that they were not to consider the fact that Holt did not testify, even though the prosecutor's statements were not related to in-court testimony. Ultimately, the court found that the error was harmless because the evidence was overwhelmingly against Holt and accordingly denied the motion for new trial.

¶ 18    Due to his criminal history, Holt was sentenced as a Class X offender on his burglary conviction. He received eight years of imprisonment for burglary, to be served concurrent to a three-year sentence for retail theft. After his motion to reconsider the sentence was denied, Holt appealed.

¶ 19                                    ANALYSIS

¶ 20    Holt's first argument on appeal is that the State failed to prove that he committed the offense of burglary. In part, he argues that the State failed to prove that he entered Walmart without authority and with the intent to commit a theft.

¶ 21    For the purposes of this argument, Holt does not dispute the facts or the evidence presented by the State at trial. Thus, the question of Holt's guilt is a question of law that we review *de novo*. *People v. Smith*, 191 Ill. 2d 408, 411 (2000).

¶ 22    Notably, there are two ways in which one can commit the offense of burglary: by either knowingly entering or without authority remaining within "a building, housetrailer, watercraft, aircraft, motor vehicle, railroad car, or any part thereof, with intent to commit therein a felony or theft." 720 ILCS 5/19-1(a) (West 2014). In this case, Holt was charged with entering Walmart without authority.

¶ 23    Recently, a different panel of this court decided the case involving the burglary conviction of Darren Johnson, the other male Peppers saw with Holt at Walmart. In *People v. Johnson*, 2018 IL App (3d) 150352, ¶ 12, a jury found Johnson guilty of burglary but not guilty of retail theft. On appeal, Johnson argued that the undisputed facts could not establish the "without authority" element of the offense of burglary because he entered the store during normal business hours and remained in designated public areas while inside the store. *Id.* ¶ 17. The State argued that under the " 'limited authority doctrine,' " Johnson never had the authority to enter the building. *Id.* ¶ 20 (quoting *People v. Wilson*, 155 Ill. 2d 374, 378 (1993), for the definition of the limited authority doctrine as " 'one's otherwise valid authority to be in certain premises is vitiated when that individual acts in a manner inconsistent with the authority originally granted' ").

¶ 24    In addressing the limited authority doctrine, the *Johnson* court discussed *People v. Bradford*, 2016 IL 118674, in which our supreme court held that the doctrine did not apply in burglary cases predicated on "burglary by remaining." *Johnson*, 2018 IL App (3d) 150352, ¶¶ 25-31. Of particular importance in *Bradford* was that the limited authority doctrine predated the retail theft statute (*id.* ¶ 27) and that allowing the doctrine in "burglary by remaining" cases would allow prosecutors overly broad discretion to charge some shoplifters with Class 2 felony

burglary and others with Class A misdemeanor retail theft, despite similar fact scenarios (*id.* ¶¶ 29-30). In addition, the *Johnson* court noted that the retail theft statute "contemplates all manifestations of retail theft, regardless of whether shoplifters form the requisite intent before or after entering the store." *Id.* ¶ 31.

¶ 25 Despite *Bradford* addressing only "burglary by remaining" cases, the *Johnson* court found its rationale applicable to "burglary by entering" cases: "Under either manifestation of burglary, the offender must lack 'authority.' If forming the intent to shoplift does not revoke one's authority to remain in a store, then it cannot logically revoke one's authority to enter either." *Id.* ¶ 33. Accordingly, the *Johnson* court extended *Bradford* to "burglary by entering" cases and held that Johnson never exceeded the authority granted to him to enter Walmart. *Id.* ¶ 36.

¶ 26 In this case, it was clear that Holt entered Walmart, a business open to the public, during normal business hours. Applying *Johnson* to this case, we hold as a matter of law that Holt did not enter Walmart without authority. Accordingly, we reverse his burglary conviction.

¶ 27 Holt's second argument on appeal is that the State failed to prove him guilty beyond a reasonable doubt of retail theft.

¶ 28 When faced with a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State and determine whether any reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985).

¶ 29 An individual commits retail theft when he or she knowingly

> "[t]akes possession of, carries away, transfers or causes to be carried away or transferred any merchandise displayed, held, stored or offered for sale in a retail mercantile establishment with the intention of retaining such merchandise or with the intention of depriving the merchant permanently of the possession, use or benefit of such merchandise without paying the full retail value of such merchandise." 720 ILCS 5/16-25(a) (West 2014).

¶ 30 Holt argues that the State failed to prove that (1) the allegedly stolen merchandise was actually offered for sale in the Rock Falls Walmart, (2) he intended to deprive Walmart of possession of the merchandise, and (3) the merchandise had any retail value. In support of his claims, Holt emphasizes, *inter alia*, that there was no evidence that the Rock Falls Walmart was in fact missing the allegedly stolen items or that he did not pay for the merchandise.

¶ 31 Our review of the record reveals that the evidence presented by the State at trial was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that Holt had committed retail theft. That evidence included that (1) Peppers witnessed Holt take items out of his clothes and place them into a red and black backpack and then reenter Walmart; (2) Peppers saw the red and black backpack on top of a Coinstar machine in Walmart's vestibule; (3) Hollaway testified that the red and black backpack contained items including three packs of socks and a dress; (4) a tag was found unattached to the dress that Hollaway stated read, "Hello Kitty thirteen ninety seven, high low dress"; (5) a shirt found in the backpack had a tag that said Walmart.com *** $7.92"; (6) 11 T-shirts attributed to Holt had tags indicating prices between $4.88 and $4.97; (7) no receipts were found in the backpack or on Holt; and (8) the store manager scanned the items attributed to Holt and determined that they were items offered for sale by the Rock Falls Walmart. Under these circumstances, we

hold it was reasonable for the jury to infer that Holt intended to steal the merchandise from the Rock Falls Walmart. See, *e.g.*, *People v. Rucker*, 294 Ill. App. 3d 218, 226 (1998) (holding that, "[f]or purposes of retail theft, the elements of intent and unauthorized control may be proved by circumstantial evidence"). Accordingly, we hold that the evidence was sufficient to prove Holt guilty beyond a reasonable doubt of retail theft.

¶ 32    Holt's third argument on appeal is that he is entitled to a new trial due to prosecutorial misconduct in closing arguments; namely, the prosecutor's comments regarding the fact that Holt did not offer an explanation as to why he had clothes in his pants. Holt claims that he did not forfeit the issue despite defense counsel's lack of an objection to the comments. However, alternatively, he argues that either reversible plain error occurred or defense counsel rendered ineffective assistance of counsel.

¶ 33    Despite Holt's claim that he properly preserved this issue for review, it is well settled in Illinois that the preservation of an alleged error for appellate review requires *both* an objection at trial and the raising of the alleged error in a posttrial motion. *People v. Sebby*, 2017 IL 119445, ¶ 48. Because defense counsel failed to object to the prosecutor's comments at trial, this issue has been forfeited. See *id.*

¶ 34    Under the plain-error doctrine, a reviewing court can excuse the forfeiture of an issue if a clear or obvious error occurred and either (1) the evidence was closely balanced or (2) the error was so serious that it impacted the fairness of the trial and challenged the integrity of the judicial process. *Id.* The first step is to determine whether clear or obvious error occurred. *Id.* ¶ 49.

¶ 35    In *Doyle v. Ohio*, 426 U.S. 610, 617 (1976), the United States Supreme Court held that an individual's postarrest, post-*Miranda*-warning silence is "insolubly ambiguous" due to the possibility of the decision to remain silent being nothing more than an exercise of the right. Our supreme court has held that a prosecutor's comments in closing argument that "invited the jury to view the defendant's postarrest silence as a tacit admission of guilt" ran afoul of *Doyle* and constituted error. *People v. Herrett*, 137 Ill. 2d 195, 213 (1990).

¶ 36    In this case, the prosecutor first stated that Holt did not tell the police officers why he had clothing items in his pants. Next, even though she acknowledged that Holt was not required to offer an explanation, she stated, "if I didn't commit a crime, I would say something to the officers. I would offer that explanation." Clearly, the prosecutor's comments were intended to invite the jury to use Holt's postarrest silence as a tacit admission of his guilt. See *id.* This was a blatant violation of Holt's fifth amendment right against self-incrimination and therefore constituted clear and obvious error. See *id.*

¶ 37    Holt requests this court to review the error under the first prong of the plain-error doctrine, as he contends that the evidence was closely balanced. Under the first prong, "a reviewing court must decide whether the defendant has shown that the evidence was so closely balanced the error alone severely threatened to tip the scales of justice." *Sebby*, 2017 IL 119445, ¶ 51. If the defendant meets this burden, the error is deemed prejudicial. *Id.*

¶ 38    While we have already determined that the evidence was sufficient for a reasonable trier of fact to find beyond a reasonable doubt that Holt committed retail theft, it is imperative to recognize that the question of whether evidence is sufficient under a reasonable doubt challenge is different from the question of whether evidence is closely balanced under plain-error review. *Id.* ¶ 60 (citing *People v. Piatkowski*, 225 Ill. 2d 551, 566 (2007)). "In determining whether the evidence adduced at trial was close, a reviewing court must evaluate

the totality of the evidence and conduct a qualitative, commonsense assessment of it within the context of the case." *Id.* ¶ 53. We are required to consider the evidence in light of the elements of the offenses as charged and in light of the witnesses' credibility. *Id.*

¶ 39     As previously mentioned, an individual commits retail theft when he or she knowingly

"[t]akes possession of, carries away, transfers or causes to be carried away or transferred any merchandise displayed, held, stored or offered for sale in a retail mercantile establishment with the intention of retaining such merchandise or with the intention of depriving the merchant permanently of the possession, use or benefit of such merchandise without paying the full retail value of such merchandise." 720 ILCS 5/16-25(a) (West 2014).

¶ 40     Despite Peppers's apparent reprehensible racial animus, this case did not involve any real challenge to witness credibility. Holt was observed removing items from his clothes and placing them into a red and black backpack. He was located outside the store's vestibule, in close proximity to the red and black backpack, which contained merchandise offered for sale by Walmart. He also had merchandise offered for sale by Walmart concealed in his pants. Even though the only arguably inculpatory statement from Holt was that his friend knew he had the friend's transit ID card, the card in question was found inside the red and black backpack. The circumstantial evidence presented in this case significantly outweighed any possible inferences that could be drawn in Holt's favor. Under these circumstances, we conclude that the evidence was not closely balanced. Therefore, we hold that Holt has failed to meet his burden under the first prong of the plain-error inquiry. The procedural default of this issue will be upheld.

¶ 41     Lastly, Holt argues that defense counsel rendered ineffective assistance of counsel by failing to object to the prosecutor's improper comments during closing arguments.

¶ 42     To establish ineffective assistance of counsel, a defendant must prove that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness and (2) he suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *People v. Albanese*, 104 Ill. 2d 504, 525-26 (1984). To establish prejudice, the defendant must show that, but for counsel's deficient performance, a reasonable probability exists that the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. The failure to satisfy both prongs of the *Strickland* inquiry is fatal to a claim of ineffective assistance; accordingly, a defendant's claim can potentially be resolved solely on the prejudice prong. *Albanese*, 104 Ill. 2d at 527.

¶ 43     The analysis applicable to the prejudice prong of the *Strickland* inquiry is similar to the analysis applicable to the first prong of the plain-error inquiry. See *People v. Johnson*, 218 Ill. 2d 125, 143-44 (2005). Because we have determined that Holt failed to meet his burden under the first prong of the plain-error inquiry—and thus that the evidence was not closely balanced—we hold that Holt cannot satisfy the prejudice prong of the *Strickland* inquiry. See *id.* at 144. There is no reasonable probability that the outcome of the proceeding would have been different had defense counsel objected to the prosecutor's improper comments during closing arguments. See *id.* Accordingly, we reject Holt's ineffective assistance argument.

¶ 44     For the foregoing reasons, we reverse Holt's burglary conviction but affirm his retail theft conviction.

CONCLUSION

¶ 46    The judgment of the circuit court of Whiteside County is affirmed in part and reversed in part.

¶ 47    Affirmed in part and reversed in part.

¶ 48    JUSTICE LYTTON, concurring in part and dissenting in part:

¶ 49    I concur with the majority's decision to affirm defendant's retail theft conviction. I dissent from the majority's reversal of defendant's burglary conviction. I find that *Johnson* was wrongly decided and that the majority erred in relying on it.

¶ 50    Under the burglary statute, there are two ways to commit burglary: (1) burglary by entering and (2) burglary by remaining. See *People v. Bradford*, 2016 IL 118674, ¶ 13 (citing 720 ILCS 5/19-1(a) (West 2012)). In 1968, our supreme court held that entering a building open to the public is "without authority" in a "burglary by entering" case if the defendant enters with the intent to commit a theft therein. *People v. Weaver*, 41 Ill. 2d 434, 439 (1968). The court explained that "authority to enter a business building, or other building open to the public, extends only to those who enter with a purpose consistent with the reason the building is open." *Id.*

¶ 51    For 50 years, Illinois courts consistently followed *Weaver*, holding that when a person enters a building with the intent to commit a theft or felony, that person enters "without authority" under the "burglary by entering" statute. See *People v. Blair*, 52 Ill. 2d 371, 374 (1972); *People v. Gharrett*, 2016 IL App (4th) 140315, ¶¶ 53-54; *People v. Rudd*, 2012 IL App (5th) 100528, ¶¶ 13-14; *People v. Bridgewater*, 388 Ill. App. 3d 787, 801 (2009); *People v. Szydloski*, 283 Ill. App. 3d 274, 278-79 (1996); *People v. Smith*, 264 Ill. App. 3d 82, 87-88 (1994); *People v. Durham*, 252 Ill. App. 3d 88, 92 (1993); *People v. Hopkins*, 229 Ill. App. 3d 665, 671-73 (1992); *People v. Drake*, 172 Ill. App. 3d 1026, 1028 (1988); *People v. Stager*, 168 Ill. App. 3d 457, 459-60 (1988); *People v. Boose*, 139 Ill. App. 3d 471, 473 (1985); *People v. Patterson*, 1 Ill. App. 3d 724, 726 (1971). Then, in 2018, we issued our opinion in *Johnson*, holding that a person does not enter a business "without authority" if he enters during business hours, remains in public areas while inside, and leaves before it closes, even if he enters with the intent to commit a theft. *Johnson*, 2018 IL App (3d) 150352, ¶ 36.

¶ 52    In reaching our decision in *Johnson*, we relied on the supreme court's decision in *People v. Bradford*, 2016 IL 118674. In *Bradford*, the supreme court ruled that a defendant commits "burglary by remaining" in a public place only if he (1) hides and waits for the building to close, (2) enters unauthorized areas of the building, or (3) remains on the premises after his authority has been revoked. *Id.* ¶ 31. A defendant who enters a store during regular business hours, never enters areas of the store that are off-limits to the public, shoplifts items, and leaves while the store is open is not guilty of "burglary by remaining." *Id.* ¶ 32.

¶ 53    In *Johnson*, we found that "*Bradford* changes the law and effectively overrules the law" set forth in "a long line of cases" holding that "one who intends to commit retail theft lacks authority to enter a store." *Johnson*, 2018 IL App (3d) 150352, ¶ 28. I disagree.

¶ 54    The supreme court in *Bradford* made clear that its holding applied only to "burglary by remaining" cases. First, the court repeatedly used the phrase "burglary by remaining" in its legal conclusions. See *Bradford*, 2016 IL 118674, ¶ 31 (holding that "an individual commits

*burglary by remaining* in a public place only where" he exceeds his physical authority and that "*burglary by remaining* includes" certain behaviors (emphases added)). Additionally, the court in *Bradford* discussed *Weaver* and cited with approval its holding that "evidence that a defendant enters a place of business in order to commit a theft is sufficient to satisfy the 'without authority' element of burglary by entering." *Bradford*, 2016 IL 118674, ¶ 23 (citing *Weaver*, 41 Ill. 2d at 439). I find nothing in the supreme court's decision in *Bradford* suggesting that it changed the law with respect to "burglary by entering" cases, like *Johnson* or this case.

¶ 55 I am not alone in my disagreement with *Johnson*. Two districts of the appellate court in our state have also disagreed with and declined to follow our decision. See *People v. Moore*, 2018 IL App (2d) 160277, ¶ 26; *People v. Burlington*, 2018 IL App (4th) 150642, ¶ 32. In *Burlington*, the Fourth District stated:

> "We find the supreme court's decision in *Bradford* does not affect the holding of *Weaver* and its progeny. While it rejected the State's interpretation of [burglary by remaining] based on *Weaver*'s holding, the decision in no way indicated *Weaver* was no longer good law for [burglary by entering]. The supreme court specifically only addressed [burglary by remaining]. The *Bradford* decision did not state an entry into a public building with a criminal intent is now a lawful entry." *Burlington*, 2018 IL App (4th) 150642, ¶ 27.

The Second District in *Moore* agreed: "[N]othing in *Bradford* purports to overrule *Weaver*, where the court held that the burglary statute applied to the entry of an establishment otherwise open to the public [citation]." *Moore*, 2018 IL App (2d) 160277, ¶ 22. The court stated: "We agree with *Burlington* that the history and nature of the burglary-by-remaining provision distinguish it from burglary by unauthorized entry such that *Bradford*'s rationale cannot be mechanically applied to the latter provision." *Id.* ¶ 24.

¶ 56 I agree that *Bradford* did not overrule *Weaver*, a case that has been repeatedly and universally followed in this state for over 50 years. I find that *Weaver* controls this case and does not support reversal of defendant's burglary conviction.