# Illinois Official Reports

## Appellate Court

---

### *People v. Holt*, 2019 IL App (3d) 160504-B

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FREDERICK L. HOLT, Defendant-Appellant. |
| District & No. | Third District<br>No. 3-16-0504 |
| Filed | December 11, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Whiteside County, No. 14-CF-253; the Hon. Stanley B. Steines, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Peter A. Carusona, and James Wozniak, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>Terry A. Costello, State's Attorney, of Morrison (Patrick Delfino, David J. Robinson, and Justin A. Nicolosi, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE McDADE delivered the judgment of the court, with opinion.<br>Justices O'Brien and Lytton concurred in the judgment and opinion. |

¶ 1     The defendant, Frederick L. Holt, was convicted of burglary (720 ILCS 5/19-1(a) (West 2014)) and retail theft (*id.* § 16-25(a)(1)) and was sentenced to concurrent prison terms of eight and three years, respectively. On appeal, Holt argues that (1) the State failed to prove that he committed the offense of burglary, (2) the State failed to prove him guilty beyond a reasonable doubt of retail theft, and (3) he is entitled to a new trial due to prosecutorial misconduct in closing arguments. In our opinion filed March 7, 2019, we affirmed, unanimously, defendant's conviction for retail theft and reversed his conviction for burglary, with Justice Lytton dissenting from that part of the decision.

¶ 2     On September 25, 2019, the Illinois Supreme Court denied the petition for leave to appeal filed in this case by the State and issued the following supervisory order:

    "In the exercise of this Court's supervisory authority, the Appellate Court, Third District, is directed to vacate its judgment in *People v. Holt*, case No. 3-16-0504 (03/07/19). The appellate court is directed to consider the effect of this Court's opinion in *People v. Johnson*, 2019 IL 123318, on the issue of whether the State failed to prove that defendant committed the offense of burglary and determine if a different result is warranted." *People v. Holt*, No. 124739 (Ill. Sept. 25, 2019) (supervisory order).

Accordingly, we vacate our earlier judgment in this case and render the following decision.

¶ 3                                                FACTS

¶ 4     On July 23, 2014, the State charged Holt with burglary and retail theft. The charges stemmed from an incident that took place at a Walmart in Rock Falls on July 22, 2014. The State alleged that on July 22, 2014, Holt (1) entered Walmart without authority and with the intent to commit theft and (2) stole 11 T-shirts, three packages of socks, and a dress, all of which had a total value of less than $300.

¶ 5     The circuit court held a jury trial on February 11 and 12, 2015. Amanda Peppers testified that she was shopping with her nephew in the Rock Falls Walmart on July 22, 2014. When she was in the parking lot getting ready to leave, her nephew pointed out two males, one of whom she identified as Holt, who were coming out of the store. Peppers stated that she observed the males reach behind the soda machines, pull out backpacks, take items out of their clothes, and place the items in the backpacks. She testified that she observed Holt take "something long and orange, like a fabric of some sort" out of his pants and place it in a red and black backpack. Peppers further stated that the two males walked back into the vestibule by the Coinstar machine, but she could not see what they were doing. Then, the males walked back into the store. She stated that the males carried the backpacks into the vestibule by the Coinstar machine, but when they reentered the store, they were no longer carrying the backpacks.

¶ 6     Peppers called the police. Subsequently, she saw the males exit Walmart separately. When Holt left the store, he was not carrying anything. He sat on a bench outside the door.

¶ 7     After the police arrived and arrested the other male, Peppers exited her vehicle and approached Rock Falls police officer James Hollaway. While they were talking, she noticed a red and black backpack on top of the Coinstar machine.

¶ 8     On cross-examination, Peppers stated that she saw the males inside the store while she was shopping, but she did not see them steal anything. Peppers also admitted that she "may have"

told Hollaway that she "was tired of these people going in the store and stealing stuff." She acknowledged that both males were black.

¶ 9 Hollaway testified that when he arrived on the scene, he noticed a red and black backpack on the Coinstar machine in the store's vestibule. He took the backpack over to Holt and, after being informed that Holt had already been Mirandized (see *Miranda v. Arizona*, 384 U.S. 436 (1966)), asked if it was his; Holt said no. Hollaway told Holt the backpack was abandoned property, so he opened it and found girl's clothing and a transit identification (ID) card that did not bear Holt's name. When asked about the ID card, Holt said it was his friend's card.

¶ 10 Hollaway testified that the backpack contained three packs of socks, a dress, a pair of pants, and a two-piece shirt set. He described the packs of socks and noted that one of them did not have a sticker on it. He stated that neither the dress nor the pants had tags on them, but the exhibit contained a tag that he believed was from the dress. He read the tag: "Hello Kitty thirteen ninety seven, high low dress." He also described the shirt set as "Faded Glory, two-piece set size five, says Walmart.com, rack 15, $7.92." There was an owl on the shirt that matched owls on the purple pants. Hollaway also described the 11 T-shirts that were found on Holt's person. All of the T-shirts were priced at $4.88 or $4.97.

¶ 11 Hollaway testified that he concluded the items had been stolen because there were no receipts and no proof that Holt had paid for the items. He stated that the store manager had scanned the items and determined that they all were items offered for sale by Walmart. He admitted that he did not scan the area or search garbage cans for any receipts.

¶ 12 Rock Falls police officer John Worcester testified that when he arrived on the scene, he saw a black male fitting a description of a suspect grab a backpack from on top of a Coinstar machine and walk away briskly when he saw the police officers approaching. Worcester approached Holt, who fit the description of the other suspect. Holt told Worcester his name, gave him a state identification card, and denied the red and black backpack was his. However, when asked by the police why he had someone else's ID card, Holt stated that his friend knew he had the ID. Worcester testified "[w]e took that as possibly him explaining that he was traveling using that or that he wasn't in trouble by having someone else's ID." Worcester stated the backpack contained 11 T-shirts that appeared to be made for young girls.

¶ 13 Worcester also noticed a large bulge in the front of Holt's pants. When asked about it, Holt stated that he had clothing in his pants. Because Holt had been arrested and Mirandized by that point, Worcester performed a pat down of Holt, felt soft material in his pants, and removed the items, which were three packs of socks and a dress. Holt did not offer any explanation as to why the items were in his pants; Worcester testified that Holt "just kept denying it even though that is not how he carries things around."

¶ 14 Donna Courtney, the Rock Falls Walmart manager, testified that she determined that the items found in the red and black backpack and on Holt's person were items that were offered for sale by Walmart. She stated that the items were all located in the girl's wear section, which was an area not covered by surveillance cameras. A recording from the store's surveillance cameras was admitted into evidence and played for the jury. No identification of the individuals on the recording was made at trial; the prosecutor simply asked Courtney "did you have any interaction with Mr. Holt who is seen on the video?" Courtney said no. Defense counsel did not object.

¶ 15 During closing argument, defense counsel noted that Holt did not say anything to the police when they initially approached him. Counsel then stated: "Mr. Holt is under no obligation to

talk to the police officers. Now, you are saying God, if I was [*sic*] innocent, I would jump up and down and scream. Well, you don't have to do that."

¶ 16    In rebuttal, the prosecutor referred to the items found in Holt's pants and stated:

"He never gave an explanation as to why they were in his pants when the officers asked.

[Defense Counsel] is right, he doesn't have to, but if I didn't commit a crime, I would say something to the officers. I would offer that explanation."

Defense counsel did not object.

¶ 17    The jury returned guilty verdicts on both charges.

¶ 18    Defense counsel filed a motion for new trial in which he alleged that the above-quoted statements made by the prosecutor in rebuttal argument constituted misconduct. At the hearing on the motion, the circuit court found that the prosecutor's statements violated Holt's constitutional right to remain silent and therefore constituted error. After noting that the error was neither corrected by the court *sua sponte* nor objected to by defense counsel, the court undertook a harmless error analysis. The court mentioned that the statements were only two sentences of a larger argument that came during rebuttal and that the jury was given an instruction that they were not to consider the fact that Holt did not testify, even though the prosecutor's statements were not related to in-court testimony. Ultimately, the court found that the error was harmless because the evidence was overwhelmingly against Holt and accordingly denied the motion for new trial.

¶ 19    Due to his criminal history, Holt was sentenced as a Class X offender on his burglary conviction. He received eight years of imprisonment for burglary, to be served concurrent to a three-year sentence for retail theft. After his motion to reconsider the sentence was denied, Holt appealed.

¶ 20                                    ANALYSIS

¶ 21    Holt's first argument on appeal is that the State failed to prove that he committed the offense of burglary. In part, he argues that the State failed to prove that he entered Walmart without authority and with the intent to commit a theft.

¶ 22    For the purposes of this argument, Holt does not dispute the facts or the evidence presented by the State at trial. Thus, the question of Holt's guilt is a question of law that we review *de novo*. *People v. Smith*, 191 Ill. 2d 408, 411 (2000).

¶ 23    Notably, there are two ways in which one can commit the offense of burglary: by either knowingly entering or without authority remaining within "a building, housetrailer, watercraft, aircraft, motor vehicle, railroad car, or any part thereof, with intent to commit therein a felony or theft." 720 ILCS 5/19-1(a) (West 2014). In this case, Holt was charged with entering Walmart without authority.

¶ 24    Recently, a different panel of this court decided the case involving the burglary conviction of Darren Johnson, the other male Peppers saw with Holt at Walmart. In *People v. Johnson*, 2018 IL App (3d) 150352, ¶ 12, a jury found Johnson guilty of burglary but not guilty of retail theft. On appeal, Johnson argued that the undisputed facts could not establish the "without authority" element of the offense of burglary because he entered the store during normal business hours and remained in designated public areas while inside the store. *Id.* ¶ 17. The State argued that under the " 'limited authority doctrine,' " Johnson never had the authority to enter the building. *Id.* ¶ 20 (defining the limited authority doctrine as " 'one's otherwise valid

authority to be in certain premises is vitiated when that individual acts in a manner inconsistent with the authority originally granted' " (quoting *People v. Wilson*, 155 Ill. 2d 374, 378 (1993))).

¶ 25    In addressing the limited authority doctrine, the *Johnson* court discussed *People v. Bradford*, 2016 IL 118674, in which our supreme court held that the doctrine did not apply in burglary cases predicated on "burglary by remaining." *Johnson*, 2018 IL App (3d) 150352, ¶¶ 25-31. Of particular importance in *Bradford* was that the limited authority doctrine predated the retail theft statute (*id.* ¶ 27) and that allowing the doctrine in "burglary by remaining" cases would allow prosecutors overly broad discretion to charge some shoplifters with Class 2 felony burglary and others with Class A misdemeanor retail theft, despite similar fact scenarios (*id.* ¶¶ 29-30). In addition, the *Johnson* court noted that the retail theft statute "contemplates all manifestations of retail theft, regardless of whether shoplifters form the requisite intent before or after entering the store." *Id.* ¶ 31.

¶ 26    Despite *Bradford* addressing only "burglary by remaining" cases, the *Johnson* court found its rationale applicable to "burglary by entering" cases: "Under either manifestation of burglary, the offender must lack 'authority.' If forming the intent to shoplift does not revoke one's authority to remain in a store, then it cannot logically revoke one's authority to enter either." *Id.* ¶ 33. Accordingly, the *Johnson* court extended *Bradford* to "burglary by entering" cases and held that Johnson never exceeded the authority granted to him to enter Walmart. *Id.* ¶ 36.

¶ 27    The Illinois Supreme Court granted leave to appeal in *Johnson* and, in an opinion issued by a divided court on August 1, 2019, reversed this court's decision in *Johnson*. See *People v. Johnson*, 2019 IL 123318. In its decision, the *Johnson* majority rejected the argument of the dissenting judges that the legislature intended the retail theft statute (720 ILCS 5/16-25 *et seq.* (West 2014)) to provide the sole basis for the prosecution of theft from retail establishments. Instead the court held that the retail theft legislation does not state or otherwise evidence the exclusive intent ascribed to it by the dissent, that burglary is not being charged "as an alternative means of prosecuting shoplifters" but, rather, as a separate crime with different elements—one that is not dependent on actual theft, and that burglary by unauthorized entry was complete solely upon a showing that a defendant entered the building with an intent to commit theft. See *Johnson*, 2019 IL 123318, ¶¶ 36-45.

¶ 28    It is clear that our earlier finding based on our court's decision in *Johnson*, 2018 IL App (3d) 150352, that Holt was not guilty of burglary cannot be sustained in light of the supreme court's reversal in *Johnson*, 2019 IL 123318. He can be found guilty of burglary by unauthorized entry if there is evidence in the record sufficient to prove that he entered the Walmart store with the intent to commit a theft. We consider whether evidence of such intent was present.

¶ 29    Peppers testified that as she and her nephew were preparing to leave the Walmart parking lot after completing her shopping, she observed two men, one of whom she later identified at trial as Holt, leaving the store. She watched as both men retrieved backpacks from behind soda vending machines and began removing items from their clothing and placing them in the backpacks. She said they then returned to the store's vestibule. Although she could not see from her vantage point what they were doing, she did observe that they were carrying the backpacks when they entered the vestibule but did not have them when they returned to the interior of the store. She called the police and, while she was waiting for them, she saw the

men reemerge from the interior. When Holt left the store, he was not carrying anything, including a backpack, in his hands.

¶ 30 Upon consideration of these facts, viewed in the light most favorable to the prosecution, we find they are sufficient to satisfy the elements of the burglary and to support a reasonable inference that Holt hid his backpack behind the vending machines outside the store's retail area with the intent of taking items from the store, hiding them in the backpack, and removing them from the premises. Thus, we find that Holt entered Walmart with the intent of committing retail theft, thereby satisfying the requirement of the burglary statute that his entry was unauthorized. His conviction of that felony is affirmed.

¶ 31 Holt's second argument on appeal is that the State failed to prove him guilty beyond a reasonable doubt of retail theft.

¶ 32 When faced with a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State and determine whether any reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985).

¶ 33 An individual commits retail theft when he or she knowingly

"[t]akes possession of, carries away, transfers or causes to be carried away or transferred any merchandise displayed, held, stored or offered for sale in a retail mercantile establishment with the intention of retaining such merchandise or with the intention of depriving the merchant permanently of the possession, use or benefit of such merchandise without paying the full retail value of such merchandise." 720 ILCS 5/16-25(a)(1) (West 2014).

¶ 34 Holt argues that the State failed to prove that (1) the allegedly stolen merchandise was actually offered for sale in the Rock Falls Walmart, (2) he intended to deprive Walmart of possession of the merchandise, and (3) the merchandise had any retail value. In support of his claims, Holt emphasizes, *inter alia*, that there was no evidence that the Rock Falls Walmart was in fact missing the allegedly stolen items or that he did not pay for the merchandise.

¶ 35 Our review of the record reveals that the evidence presented by the State at trial was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that Holt had committed retail theft. That evidence included that (1) Peppers witnessed Holt take items out of his clothes and place them into a red and black backpack and then reenter Walmart; (2) Peppers saw the red and black backpack on top of a Coinstar machine in Walmart's vestibule; (3) Hollaway testified that the red and black backpack contained items including three packs of socks and a dress; (4) a tag was found unattached to the dress that Hollaway stated read, "Hello Kitty thirteen ninety seven, high low dress"; (5) a shirt found in the backpack had a tag that said "Walmart.com *** $7.92"; (6) 11 T-shirts attributed to Holt had tags indicating prices between $4.88 and $4.97; (7) no receipts were found in the backpack or on Holt; and (8) the store manager scanned the items attributed to Holt and determined that they were items offered for sale by the Rock Falls Walmart. Under these circumstances, we hold it was reasonable for the jury to infer that Holt intended to steal the merchandise from the Rock Falls Walmart. See, *e.g.*, *People v. Rucker*, 294 Ill. App. 3d 218, 226 (1998) (holding that, "[f]or purposes of retail theft, the elements of intent and unauthorized control may be proved by circumstantial evidence"). Accordingly, we hold that the evidence was sufficient to prove Holt guilty beyond a reasonable doubt of retail theft.

¶ 36    Holt's third argument on appeal is that he is entitled to a new trial due to prosecutorial misconduct in closing arguments: namely, the prosecutor's comments regarding the fact that Holt did not offer an explanation as to why he had clothes in his pants. Holt claims that he did not forfeit the issue despite defense counsel's lack of an objection to the comments. However, alternatively, he argues that either reversible plain error occurred or defense counsel rendered ineffective assistance of counsel.

¶ 37    Despite Holt's claim that he properly preserved this issue for review, it is well settled in Illinois that the preservation of an alleged error for appellate review requires *both* an objection at trial and the raising of the alleged error in a posttrial motion. *People v. Sebby*, 2017 IL 119445, ¶ 48. Because defense counsel failed to object to the prosecutor's comments at trial, this issue has been forfeited. See *id.*

¶ 38    Under the plain-error doctrine, a reviewing court can excuse the forfeiture of an issue if a clear or obvious error occurred and either (1) the evidence was closely balanced or (2) the error was so serious that it impacted the fairness of the trial and challenged the integrity of the judicial process. *Id.* The first step is to determine whether clear or obvious error occurred. *Id.* ¶ 49.

¶ 39    In *Doyle v. Ohio*, 426 U.S. 610, 617 (1976), the United States Supreme Court held that an individual's postarrest, post-*Miranda*-warning silence is "insolubly ambiguous" due to the possibility of the decision to remain silent being nothing more than an exercise of the right. Our supreme court has held that a prosecutor's comments in closing argument that "invited the jury to view the defendant's post-arrest silence as a tacit admission of guilt" ran afoul of *Doyle* and constituted error. *People v. Herrett*, 137 Ill. 2d 195, 213 (1990).

¶ 40    In this case, the prosecutor first stated that Holt did not tell the police officers why he had clothing items in his pants. Next, even though she acknowledged that Holt was not required to offer an explanation, she stated, "if I didn't commit a crime, I would say something to the officers. I would offer that explanation." Clearly, the prosecutor's comments were intended to invite the jury to use Holt's postarrest silence as a tacit admission of his guilt. See *id.* This was a blatant violation of Holt's fifth amendment right against self-incrimination and therefore constituted clear and obvious error. See *id.*

¶ 41    Holt requests this court to review the error under the first prong of the plain-error doctrine, as he contends that the evidence was closely balanced. Under the first prong, "a reviewing court must decide whether the defendant has shown that the evidence was so closely balanced the error alone severely threatened to tip the scales of justice." *Sebby*, 2017 IL 119445, ¶ 51. If the defendant meets this burden, the error is deemed prejudicial. *Id.*

¶ 42    While we have already determined that the evidence was sufficient for a reasonable trier of fact to find beyond a reasonable doubt that Holt committed retail theft, it is imperative to recognize that the question of whether evidence is sufficient under a reasonable doubt challenge is different from the question of whether evidence is closely balanced under plain-error review. *Id.* ¶ 60 (citing *People v. Piatkowski*, 225 Ill. 2d 551, 566 (2007)). "In determining whether the evidence adduced at trial was close, a reviewing court must evaluate the totality of the evidence and conduct a qualitative, commonsense assessment of it within the context of the case." *Id.* ¶ 53. We are required to consider the evidence in light of the elements of the offenses as charged and in light of the witnesses' credibility. *Id.*

¶ 43    As previously mentioned, an individual commits retail theft when he or she knowingly

"[t]akes possession of, carries away, transfers or causes to be carried away or transferred any merchandise displayed, held, stored or offered for sale in a retail mercantile establishment with the intention of retaining such merchandise or with the intention of depriving the merchant permanently of the possession, use or benefit of such merchandise without paying the full retail value of such merchandise." 720 ILCS 5/16-25(a)(1) (West 2014).

¶ 44   Despite Peppers's apparent reprehensible racial animus, this case did not involve any real challenge to witness credibility. Holt was observed removing items from his clothes and placing them into a red and black backpack. He was located outside the store's vestibule, in close proximity to the red and black backpack, which contained merchandise offered for sale by Walmart. He also had merchandise offered for sale by Walmart concealed in his pants. Even though the only arguably inculpatory statement from Holt was that his friend knew he had the friend's transit ID card, the card in question was found inside the red and black backpack. The circumstantial evidence presented in this case significantly outweighed any possible inferences that could be drawn in Holt's favor. Under these circumstances, we conclude that the evidence was not closely balanced. Therefore, we hold that Holt has failed to meet his burden under the first prong of the plain-error inquiry. The procedural default of this issue will be upheld.

¶ 45   Lastly, Holt argues that defense counsel rendered ineffective assistance of counsel by failing to object to the prosecutor's improper comments during closing arguments.

¶ 46   To establish ineffective assistance of counsel, a defendant must prove that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness and (2) he suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *People v. Albanese*, 104 Ill. 2d 504, 525-26 (1984). To establish prejudice, the defendant must show that, but for counsel's deficient performance, a reasonable probability exists that the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. The failure to satisfy both prongs of the *Strickland* inquiry is fatal to a claim of ineffective assistance; accordingly, a defendant's claim can potentially be resolved solely on the prejudice prong. *Albanese*, 104 Ill. 2d at 527.

¶ 47   The analysis applicable to the prejudice prong of the *Strickland* inquiry is similar to the analysis applicable to the first prong of the plain-error inquiry. See *People v. Johnson*, 218 Ill. 2d 125, 143-44 (2005). Because we have determined that Holt failed to meet his burden under the first prong of the plain-error inquiry—and thus that the evidence was not closely balanced—we hold that Holt cannot satisfy the prejudice prong of the *Strickland* inquiry. See *id.* at 144. There is no reasonable probability that the outcome of the proceeding would have been different had defense counsel objected to the prosecutor's improper comments during closing arguments. See *id.* Accordingly, we reject Holt's ineffective assistance argument.

¶ 48   For the foregoing reasons, we affirm both Holt's burglary conviction and his retail theft conviction.

¶ 49                                   CONCLUSION

¶ 50   The judgment of the circuit court of Whiteside County is affirmed.

¶ 51   Affirmed.